```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       WESTERN DIVISION

Bradford Company,            )
                             )
             Plaintiff,      )  Case No. 1:05-CV-449
                             )
    vs.                      )
                             )
Afco Manufacturing, et al.,  )
                             )
                             )
             Defendants.     )
```

O R D E R

This matter is before the Court on Defendants conTeyor Multibag Systems N.V.'s and conTeyor North America, Inc.'s motions for summary judgment (Doc. Nos. 98 & 99).  For the reasons that follow, the Court finds that Defendants' accused product does not infringe Claims 1, 4 and 5 of U.S. Patent No. 6,230,916 and Claims 1, 4, 10, 11, and 19 of U.S. Patent No. 6,540,096 because its dunnage structure is not "coupled to" a "frame," "side structure," or "open frame."  Accordingly, Defendants' first motion for summary judgment (Doc. No. 98) is well-taken and is **GRANTED**.  As a result of this ruling, Defendants' second motion for summary judgment (Doc. No. 99) is **MOOT.**

I. Factual and Procedural Background

On July 1, 2005, Plaintiff Bradford Company filed a complaint for patent infringement (Doc. No. 1) which alleged,

1

inter alia, that Defendant conTeyor Multibag Systems N.V.'s and conTeyor North America, Inc.'s (collectively "conTeyor") "automotive bag rack used for shipping" infringes U.S. Patent Nos. 6,230,916 ("the '916 Patent") and 6,540,096 ("the '096 Patent"). The Court has described the subject matter claimed by these patents in previous orders. See Doc. Nos. 67 & 88. Suffice it to say for present purposes that both patents claim collapsible shipping containers with integrally supported dunnage. At issue in these motions is whether the accused product literally infringes Claims 1, 4 and 5 of the '916 Patent and Claims 1, 4, 10, 11, and 19 of the '096 Patent.[1]

In relevant part, the '916 Patent claims the following:

Claim 1 - A reusable and returnable rack container for supporting a product thereon during shipment and subsequently being returned generally empty of product for reuse comprising:

a frame having a top member, a bottom member and a plurality of legs extending there between, the legs configured for being moveable between an erected position for spacing the top member above the bottom member to support a product placed on the rack and a collapsed position for collapsing and reducing the size of the container for return;

the legs being hinged along their respective lengths for being folded into the collapsed position;

---

[1] The Court assumes that only literal infringement is at issue at this time because neither party's brief discusses the doctrine of equivalents.

>>a dunnage structure supported by the frame for receiving a product placed on the rack for shipment when the legs are in an erected position;
>>
>>the dunnage structure operable for relaxing when the legs are in a collapsed position such that the dunnage structure is generally positioned on the reduced size rack structure for return;
>>
>>the dunnage structure movably coupled to the frame and operable for being moved with respect to said erected frame to vary the position of the dunnage structure and the received product within the container;
>>
>>whereby, the rack provides reusable dunnage which is usable with the container when it is shipped and subsequently remains with the container when it is returned for being reused when the container is again shipped.
>
>Claim 4 - The rack container of claim 1 wherein the legs extend generally vertically between the top and bottom members, to space the top member above the bottom member;
>
>Claim 5 - the rack container of claim 1 wherein the dunnage structure is a pouch for holding the product.

'916 Patent, col. 17, ll. 37-63, col. 18, ll. 5-9.  As can be seen, Claim 1 is an independent claim and Claims 4 and 5 are dependent claims of Claim 1.

>The '096 Patent claims in relevant part:
>
>Claim 1 - A reusable and returnable container for holding product therein during shipment and then being returned for reuse, the container comprising:
>
>>a body having at least two opposing and moveable side structures, the side structures configured for being selectively moved into

3

> an erected position for shipment and moved into a collapsed position for reducing the size of the container for return;
>
> a dunnage structure spanning between the side structures, the dunnage structure being operably coupled to the side structures for automatically moving, with the side structures, to an erected position for receiving product when the side structures are erected and moving to a collapsed position when the side structures are collapsed so that the dunnage remains with the container when returned;
>
> the dunnage structure having an open end facing at least one side structure of the body, the at least one side structure defining an open area which is in alignment with the dunnage structure open end for accessing the dunnage structure and transferring product into and out of the dunnage structure from a side of the container;
>
> whereby a person may more efficiently and safely remove product from the container and the container and dunnage is readily reused;

> Claim 4 - The container of claim 1 further comprising a latching structure coupled to the body for securing at least one of said side structures in the erected position.
>
> Claim 10 - The container of claim 1 further comprising rails coupled to the side structures, the dunnage structure being coupled at its ends to the rails to span between the rails.
>
> Claim 11 - The container of claim 10 wherein said dunnage structure comprises a plurality of compartments coupled at their ends to the rails, the compartments being slidable along said rails.
>
> Claim 19 - A reusable and returnable container for holding product therein during shipment and

> then being returned for reuse, the container comprising:
>
> a body having at least two opposing and moveable side structures which are configured for being selectively moved into an erected position for shipment and moved into a collapsed position for reducing the size of the container for return;
>
> at least one side structure comprising an open frame with a section hingedly coupled with respect to the body to be selectively hinged between the collapsed and erected positions;
>
> a dunnage structure spanning between the side structures, the dunnage structure being operably coupled to the open frame for moving to an erected position for receiving product when the frame is erected and moving to a collapsed position in the body when the frame is collapsed so that the dunnage remains with the container when returned;
>
> the dunnage structure having an open end facing the open frame, the frame defining an open area which is in alignment with the dunnage structure open end for accessing the dunnage structure and transferring product into and out of the dunnage structure from the side of the container;
>
> whereby a person may more efficiently and safely remove product from the container and the container and dunnage is readily reused.

'096 Patent col. 13, ll. 26-50, ll. 60-63, col. 14, ll. 15-21, ll. 49-67, col. 15 ll. 1-9. Claims 1 and 19 are independent claims and Claims 4, 10 and 11 are dependent claims of Claim 1.

On December 5, 2006, the Court issued a claim construction order (Doc. No. 67) construing the terms of these patents put in issue by the parties. As is relevant here, with

5

regard to Claim 1 of the '916 Patent, the Court determined that "dunnage structure moveably coupled to the frame" means the following:

"dunnage structure" means "a number of flexible parts held or put together in a particular way for separating and protecting the products shipped in the container."

"coupled to" means "linked together, connected or joined."

"frame" means "a structure that gives shape or support but excluding a substantially continuous surface (i.e., walls), that gives shape or support to the rack container."  Doc. No. 67, at 54.

With regard to Claim 1 of the '096 Patent, based on the parties' agreement, the Court determined that "dunnage structure being operably coupled to the side structures for" means "'coupled to' the two opposing and moveable 'side structures' so that the 'dunnage structure' can be."  Doc. No. 67, at 58.  As indicated, the Court determined that "coupled to" means "linked together, connected or joined."  The Court also determined that "side structures" means "structural elements partially defining the opposing, generally vertical areas of the body when in an erect position."  Id. at 55-57.

With regard to Claim 19 of the '096 Patent, the Court determined that "the dunnage structure being operably coupled to the open frame" means:

6

"dunnage structure" means "a number of flexible parts held or put together in a particular way for separating and protecting the products shipped in the container."

"coupled to" means "linked together, connected or joined."

"frame" means "a basic structure, but excluding a substantially continuous surface (i.e., walls), that gives shape or support to the rack container."  Doc. No. 67, at 65-66, 72-73.

After the close of discovery, conTeyor filed a number of motions for summary judgment which address a variety of issues.  As is pertinent here, conTeyor filed two motions for summary judgment (Doc. Nos. 98 & 99) which argue that the accused product does not infringe either the '916 Patent or the '096 Patent.  In particular, conTeyor's first motion for summary judgment (Doc. No. 98) argues that the accused product does not infringe the patents-in-suit because its dunnage structure is not coupled to a frame or side structure of the container.

II. <u>Summary Judgment Standard of Review</u>

A. <u>Summary Judgment Standard of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment

7

is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be

8

shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule

9

56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

Determining whether a product literally infringes a patent is a two-step process. First, the court must determine the meaning and scope of the patent claims asserted to be infringed. Then, the trier of fact must compare the properly construed claims to the device accused of infringing. Markman v. Westview Instruments, Inc., 52 F.3d 967, 970 (Fed. Cir. 1995). To literally infringe, the accused device or process must contain every limitation of the asserted claim. Laitram Corp. v.

Rexnord, Inc., 939 F.2d 1533, 1535 (Fed. Cir. 1991). The patentee bears the burden of proving infringement by a preponderance of the evidence. Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1573 (Fed. Cir. 1994).

In this case, conTeyor argues that the accused device does not infringe the '916 Patent or the '096 Patent because its dunnage structure is coupled to rails and not to a frame or side structure of the container. In further support of this argument, conTeyor notes that in its order addressing conTeyor's invalidity contentions, the Court held that patents-in-suit do not encompass containers in which the dunnage is coupled to support bars or support rails. See generally Doc. No. 88. Conversely, Bradford argues that conTeyor is improperly asserting that the accused product does not infringe the patents-in-suit because it merely practices the prior art. Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1583 (Fed. Cir. 1995). conTeyor responds, however, that it is not asserting the "practicing prior art" defense; rather, conTeyor says that it is only contending that the Court must construe the patents-in-suit the same way for both infringement and invalidity. Cf. Atlantic Thermoplastics Co., Inc. v. Faytex Corp., 970 F.2d 834, 846 (Fed. Cir. 1992)("[C]laims mean the same for infringement and validity."). Because a finding of anticipation requires that every element of the claimed invention be literally present in the prior art,

11

Richardson v. Suzuki Motor Co., Ltd, 868 F.2d 1226, 1236 (Fed. Cir. 1989), there are probably some fine distinctions between the parties' positions which, in another case, the Court might have to definitively resolve. In this case, however, the record clearly shows, after comparison of the accused product to the plain language of the claims, as construed, that the accused product does not infringe the claims asserted by Bradford.

As indicated, supra at 6-7, Claim 1 of the '916 Patent requires the dunnage structure to be "coupled to," or linked together, connected, or joined to, the "frame" of the container. Claim 1 of the '096 Patent requires the dunnage structure to be "coupled to," or linked together, connected, or joined to, the "side structures" of the container. Finally, similar to Claim 1 of the '916 Patent, Claim 19 of the '096 Patent requires the dunnage structure to be "coupled to," or linked together, joined or connected to, the "open frame" of the container. As defined by the Court, the "frame" or "side structure" of the claimed inventions are elements of the container that provide both shape and structural support for the container. The record demonstrates, however, that the dunnage structure of the accused device is not coupled to a support or structural element of the container. Therefore, literal infringement cannot be established.

Following the adage that a picture is worth a thousand words, the reader is directed to Plaintiff's exhibit F (Doc. No. 109-7), which is a photograph of the accused product with excerpts of Bradford's expert's infringement analysis.  The accused product has a horizontal loading orientation and contains two dunnage structures.  It has a generally open frame.  In other words, the accused product does not have substantially continuous surfaces.  There is a base and vertical post at each of the four corners of the base.  Extending horizontally from the front vertical posts and extending rearwardly are the accused device's two "side structures."  Connected to the side structures are four upwardly angling bars or rails.  The bars or rails are higher at ends facing the front or rear of the container, presumably to keep the product being shipped from sliding out of the dunnage structure.  In any event, the dunnage structures of the accused device are linked or connected to the upwardly angling bars or rails by loops.

In his deposition, Bradford's expert, Wisch, agreed that the dunnage structures of the accused device are attached to the rails or angled bars:

> Q. **How is the dunnage fastened to the container?**
>
> A. **The dunnage is fastened to the container on the what is** --
>
> Q. You're referring to Exhibit B of your report?

13

>   A. That's correct.
>
>   Q. What page?
>
>   A. 3.  **On the rails.**
>
>   Q. Okay.  And are those – how does that satisfy moveably coupled?
>
>   A. The dunnage, from what it appears, it's got to have – I'm not sure exactly how it's fastened from the photographs but – and I have not seen the rack in real life, so–
>
>   Q. And you didn't ask to do that?
>
>   A. There wasn't - there wasn't one**.  But it is fastened at the rail.**

Doc. No. 99-7 (Wisch Dep. Excerpts), at 5 (emphasis added).

Importantly, Wisch also testified that the rails or angled bars are not support elements of the frame of the accused device:

>   Q. Do you see those elements identified as rails?
>
>   A. Yes.
>
>   Q. Are those not uppermost than that structure you just identified?
>
>   A. One of them is extending above it.
>
>   Q. What do you mean extending–it's completely above it; correct?

A. I can't see – it appears to me that this part of the rail here just runs from this center post here to the rear.

Q. Okay. And that is above the structure you just identified as the uppermost structure.

A. But that is not – that is a part of the dunnage rail where the dunnage is attached. This is a part of the rack frame, the outside rack frame.

Q. Is that rail structure?

A. Would I call it a structure?

Q. Uh-huh.

A. **I would not call that rail part of this – it's part of the rack but the rail – the top member here is the main part of the structure of the rack.**

. . .

Q. But now today you're saying that this bar that you have identified is the top member on the ends?

A. Today?

Q. Uh-huh.

A. It is a top member of a side.

Q. But it's not the uppermost end?

A. It is the uppermost member of the frame.

Q. But it's not the uppermost structural member.

A. It's a structural member of the frame.

15

> Q. Is it the uppermost structural member of this container?
>
> A. **I don't – what is a – what is termed a rail does not appear to be a structural member of that frame.**

Doc. No. 98-7 (Wisch Dep. Excerpts), at 1-2, 7-8 (emphasis added).

Thus, in this case, it is undisputed that the dunnage structures of the accused device are connected to support rails or angled bars - not the frame - and that the rails or angled bars are not a part of the structural system of the frame. In contrast, as discussed, the patents-in-suit claim containers in which the dunnage structure is connected to either the frame of the container or the side structures of the container. The frame and side structures provide structural support for the claimed invention. Clearly, however, the accused device does not literally infringe the independent claims at issue in the patents-in-suit because the accused device does not practice the limitation that the dunnage is coupled to the frame or side structure.

Bradford argues that the accused device infringes Claim 10 of the '096 Patent because Claim 10 teaches dunnage that is coupled to rails which in turn are coupled to the side structures. Bradford then goes on to argue that the accused device, therefore, must infringe Claim 1 because Claim 1 must be

16

broad enough to encompass containers which teach dunnage which is coupled to rails.  Bradford, however, glides over the importance of Claim 10's status as a dependent claim of Claim 1.  With regard to the infringement analysis, the question is not whether Claim 1 is broad enough to cover the invention claimed in Claim 10.  Rather, because Claim 10 is dependent on Claim 1, it cannot be infringed if Claim 1 is not infringed.  Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994).

conTeyor's second motion for summary judgment (Doc. No. 99) argues that the accused device does not infringe Claims 1, 4 and 5 of the '916 Patent because it does not have a dunnage structure that is movably coupled to the frame so that it is possible to vary the position of the received product within the erected container.  However, having already determined that Claims 1, 4, and 5 are not infringed by the accused device because the dunnage structure is not coupled to the frame or side structures, conTeyor's motion for summary judgment of non-infringement on this ground is **MOOT.**  Laitram Corp., 939 F.2d at 1535 (literal infringement requires that the accused device or process contains every limitation of the asserted claim).

<u>Conclusion</u>

In conclusion, conTeyor's first motion for summary judgment (Doc. No. 98) is well-taken and is **GRANTED**; conTeyor's second motion for summary judgment is **MOOT.**

**IT IS SO ORDERED**

Date   December 19, 2007          s/Sandra S. Beckwith
                                              Sandra S. Beckwith, Chief Judge
                                                United States District Court