**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Bradford Company,              )
                               )
                Plaintiff,     ) Case No. 1:05-CV-449
                               )
        vs.                    )
                               )
Afco Manufacturing, <u>et al.</u>,  )
                               )
                               )
                Defendants.    )

O R D E R

        This matter is before the Court on Defendant conTeyor
Multibag Systems, N.V. and Defendant conTeyor North America,
Inc.'s motion for summary judgment that Claims 1, 4, and 5 of
U.S. Patent No. 6,230,916 are invalid under 35 U.S.C. § 112 (Doc.
No. 104), motion for partial summary judgment that dependent
claims 6, 7, 8, 9, 12, 15, 16, 17, and 18 of U.S. Patent No.
6,540,096 are not entitled to the filing date of U.S. Patent No.
5,725,119 (Doc. No. 105), and motion for summary judgment that
claims 1 through 19 of U.S. Patent No. 6,540,096 are not entitled
to the filing date of U.S. Patent No. 5,725,119 (Doc. No. 106).
Also before the Court is Plaintiff Bradford Company's motion for
the Court to consider newly-produced evidence (Doc. No. 125).
For the reasons that follow, Defendants' motion for summary
judgment that Claims 1, 4, and 5 of U.S. Patent No. 6,230,916 are
invalid (Doc. No. 104) is not well-taken and is **DENIED**;
Defendants' motion that dependent claims 6-9, 12, and 15-18 of

1

U.S. Patent No. 6,540,096 are not entitled to the filing date of U.S. Patent No. 5,725,119 (Doc. No. 105) is **MOOT**; Defendants' motion that claims 1 through 19 of U.S. Patent No. 6,540,096 are not entitled to the filing date of U.S. Patent No. 5,725,119 is well-taken and is **GRANTED**; Plaintiff's motion for the Court to consider newly-produced evidence is **GRANTED** to the extent that the Court will consider it in ruling on the motions for summary judgment, but otherwise the motion is **MOOT** because the evidence does not affect the outcome of the Court's decision.

I. <u>Background</u>

This patent infringement lawsuit concerns three patents of Plaintiff Bradford Company ("Bradford") claiming collapsible shipping containers. The patents-in-suit are U.S. Patent Nos. 5,725,119, 6,230,916, and 6,540,096. In its claim construction order, the Court summarized the patents-in-suit as follows:

> U.S. Patent 5,725,119, entitled "COLLAPSIBLE CONTAINER WITH INTEGRALLY SUPPORTED" (sic) ("the '119 Patent"), is dated March 10, 1998. The abstract of the '119 Patent describes the claimed invention as "[a] reusable and returnable container for holding product therein during shipment and subsequently being returned generally empty of product for reuse[.]" The body of the container is "configured for being manipulated into an erected position for containing product therein during shipment and for subsequently being manipulated into a collapsed position for reducing the size of the container for return." Moreover, "[a]n integrated dunnage structure is coupled to the body and is operable for moving into an engagement position when the container body is erected to thereby engage a product placed in the container for shipment." "The dunnage structure is further operable for moving into a

2

relaxed position when the container body is collapsed
so that the container and dunnage structure may be
returned together for reuse." Finally, "[t]he
container provides reusable dunnage which is usable
with the container when it is shipped and subsequently
remains with the container when it is returned for
being reused when the container is again shipped."

. . .

U.S. Patent 6,230,916, entitled "COLLAPSIBLE CONTAINER
WITH INTEGRALLY SUPPORTED DUNNAGE" ("the '916 Patent"),
is dated May 15, 2001. The abstract of the '916 Patent
describes the claimed invention in the same manner as
the '119 Patent. The '916 Patent is a divisional
application of the '119 Patent and thus shares the same
specification as the '119 Patent. Tr. (Doc. No. 55) at
29.

. . .

U.S. Patent 6,540,096, entitled "COLLAPSIBLE CONTAINER
WITH INTEGRALLY SUPPORTED DUNNAGE AND SIDE ENTRY" ("the
'096 Patent"), is dated April 1, 2003. The abstract of
the '096 Patent describes the claimed invention as "[a]
reusable and returnable container for holding product
therein during shipment and then being returned for
reuse[.]" The container is comprised of "a body having
at least two opposing and moveable side structures,
which are configured for being selectively moved into
an erected position for shipment and moved into a
collapsed position for reducing the size of the
container for return." "A dunnage structure spans
between the side structures and is operably coupled to
the side structures for moving to an erected position
for receiving product when the side structures are
erected and moving to a collapsed position in the body
when the side structures are collapsed so that the
dunnage remains with the container when returned." In
this invention, "[t]he dunnage structure has an open
end facing at least one side structure of the body, and
the side structure defines an open area which is in
alignment with the dunnage structure open end for
accessing the dunnage structure and transferring
product into and out of the dunnage structure from a
side of the container."

Doc. No. 67, at 6-8 (internal headings omitted).

As indicated, the '916 Patent is a divisional application of the '119 Patent. The '096 Patent is a continuation-in-part application of the '916 Patent. See also Doc. No. 110, at 4. According to the Patent and Trademark Office:

> A later application for an independent or distinct invention, carved out of a pending application and disclosing and claiming only subject matter disclosed in the earlier or parent application, is known as a divisional application or "division." A divisional application is often filed as a result of a restriction requirement made by the examiner. The divisional application must claim the benefit of the prior nonprovisional application under 35 U.S.C. 121 or 365(c). See MPEP § 201.11 for the conditions for receiving the benefit of the filing date of the prior application. The divisional application should set forth at least the portion of the earlier disclosure that is germane to the invention as claimed in the divisional application.

MANUAL OF PATENT EXAMINING PROCEDURE § 201.06. A "continuation-in-part"

> is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application and adding matter not disclosed in the said earlier nonprovisional application. (In re Klein, 1930 C.D. 2, 393 O.G. 519 (Comm'r Pat. 1930)). The continuation-in-part application may only be filed under 37 CFR 1.53(b). The continuation-in-part application must claim the benefit of the prior nonprovisional application under 35 U.S.C. 120 or 365(c).

MANUAL OF PATENT EXAMINING PROCEDURE § 201.08

4

Bradford asserted claims 1, 4, and 5 of the '916 Patent and claims 1, 2, 3, 4, 10, 11, and 19 of the '096 Patent against Defendants conTeyor Multibag Systems, N.V. and conTeyor North America, Inc. (collectively "conTeyor").[1]  On December 5, 2006, the Court issued an order on claim construction (Doc. No. 67) construing the claim terms put in issue by the parties.

On June 7, 2007, conTeyor filed a series of motions for summary judgment which addressed a number of issues, including infringement, invalidity, priority dates, and prior art.  On December 19, 2007, the Court entered an order (Doc. No. 133) granting conTeyor's motion for partial summary judgment on the issue of infringement.  The Court then denied motions filed by Bradford which argued that conTeyor's invalidity claims were mooted by the Court's finding of non-infringement.  Doc. Nos. 138 & 142.

Now before the Court are conTeyor's motions for partial summary judgment concerning the validity of the '916 Patent and whether the '096 Patent is entitled to the priority date of the '119 Patent.  Although different motions, they are both based on the premise that the later-filed patents have the same tragic flaw in that, according to the Court's claim construction order, the '119 Patent does not disclose a side-loading container.

---

[1]     Additionally, Bradford originally asserted claims 1, 17, 18, 19, and 20 of the '119 Patent against conTeyor, but later abandoned these infringement claims.  See Doc. No. 69.

5

Therefore, conTeyor argues, the '916 Patent is invalid because the claims are broader than the specification it shares with the '119 Patent.  conTeyor's argument concerning the '096 Patent is simpler, but again is based on the idea that the specification of the '119 Patent is insufficient to disclose the side-loading container claimed by the '096 Patent.  Consequently, conTeyor argues, the '096 Patent is not entitled to the priority date of the '119 Patent.

        Bradford responds that, in the context of these motions for summary judgment, the Court is not bound by its earlier determination in the claim construction order that the '119 Patent fails to disclose a side-loading container.  Additionally, Bradford argues that '119 Patent must disclose a side-loading container because the patent examiner initially rejected the application for the '096 Patent on the grounds of obviousness-type double-patenting over the '119 Patent.  Bradford notes that, in order to sustain a rejection for obviousness-type double patenting, the examiner would have had to have concluded that each claimed element in the '096 Patent was already present in the '119 Patent.  Therefore, according to Bradford, the specification of the '119 Patent must sufficiently disclose a side-loading container.  During oral argument before the Court, Bradford also argued that whether the claimed container is side-

loading or top loading in inconsequential because the '119 Patent
is an apparatus claim and not a method claim.

After the motions for summary judgment were briefed,
Bradford filed a motion asking the Court to consider newly-
produced evidence relative to whether the '119 Patent discloses a
side-loading container.  Doc. No. 125.  conTeyor opposes this
motion because the evidence is not related to question of what
the '119 Patent discloses.  This motion has also been fully
briefed.

## II. <u>Summary Judgment Standard of Review</u>

Summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The evidence presented on a motion for summary judgment
is construed in the light most favorable to the non-moving party,
who is given the benefit of all favorable inferences that can be
drawn therefrom.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654
(1962).  "The mere existence of <u>some</u> alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).  The

7

Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial."  First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly

8

regarded not as a disfavored procedural shortcut, but rather as
an integral part of the Federal Rules as a whole, which are
designed to 'secure the just, speedy and inexpensive
determination of every action.'" Celotex Corp. v. Catrett, 477
U.S. 317, 327 (1986). According to the Supreme Court, the
standard for granting summary judgment mirrors the standard for a
directed verdict, and thus summary judgment is appropriate if the
moving party establishes that there is insufficient evidence
favoring the non-moving party for a jury to return a verdict for
that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper
"against a party who fails to make a showing sufficient to
establish the existence of an element essential to the party's
case and on which that party will bear the burden of proof at
trial." Celotex Corp., 477 U.S. at 322. Significantly, the
Supreme Court also instructs that the "the plain language of Rule
56(c) mandates the entry of summary judgment, after adequate time
for discovery and upon motion" against a party who fails to make
that showing with significantly probative evidence. Id.;
Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving
party to go beyond the pleadings and designate "specific facts
showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in
Rule 56 that the moving party support its motion with affidavits

9

or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

#### A. Validity of the '916 Patent

##### 1. Invalidity Standard

As stated, conTeyor argues that the '916 Patent is invalid because its specification, shared with the '119 Patent, insufficiently discloses a side-loading container.  A patent is presumed to be valid; therefore, the party asserting that a patent is invalid bears the burden of proving invalidity by clear and convincing evidence.  Ralston Purina Co. v. Far-Mar-Co, Inc., 772 F.2d 1570, 1573-74 (Fed. Cir. 1985).  Whether the written description of the parent application satisfies the first paragraph of 35 U.S.C. § 112 is a question of fact.[2]  Id. at

---

[2]    The first paragraph of 35 U.S.C. § 112 states:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of

1575.  The written description of the parent application complies with the first paragraph of § 112 if "the disclosure of the application relied upon reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter."  Id. at 1575 (internal quotation marks omitted).

2. <u>Analysis of conTeyor's Claim that the '916 Patent is Invalid</u>

The '916 Patent is a divisional application of the '119 Patent and so they share the same specification.  In support of its invalidity argument, conTeyor argues that the scope of the claims of the '916 Patent is broader than the written specification of the '916 Patent.  Therefore, conTeyor argues, the claims of the '916 Patent are invalid because they lack support in the written description.  conTeyor's argument is based on the contention that, in the course of the claim construction proceedings, the Court has already determined that the specification of the '119 Patent fails to disclose a side-loading container.  Conversely, conTeyor argues, as written, the claims of the '916 Patent are broad enough to encompass both side-loading and top-loading containers.  Consequently, conTeyor contends that the claims are invalid because they are broader than the written specification.  According to conTeyor's argument, in order for the claims to be valid, they would have to

---

carrying out his invention.

11

include a specific structural limitation which excludes side-loading containers. <u>See</u> Doc. No. 147 (Transcript of oral argument), at 7-8.

The parties agree that the principal case on point is <u>Liebel-Flarsheim Co. v. Medrad, Inc.</u>, 481 F.3d 1371 (Fed. Cir. 2007). In <u>Liebel-Flarsheim</u>, the plaintiff held patents "directed to a front-loading fluid injector with a replaceable syringe capable of withstanding high pressures for delivering a contrast agent to a patient." <u>Id.</u> at 1373. In its originally-filed application, plaintiff specifically recited a pressure jacket in front of the syringe receiving opening. During prosecution of the application, the plaintiff learned that the defendant had an injector system without a pressure jacket. Therefore, plaintiff deleted all references in its claims for a pressure jacket in order to cover the defendant's jacketless system. <u>Id.</u> at 1374.

In the subsequent patent infringement suit filed by plaintiff, plaintiff argued for a claim construction which covered injector systems with or without a pressure jacket. As originally construed by the district court, the claims were limited to require a pressure jacket. The district court then granted summary judgment on non-infringement for the defendant because the accused devices did not contain a pressure jacket. On appeal of that order, however, the Federal Circuit determined that the district court erred in its claim construction and that

12

the claims did not include a limitation requiring a pressure jacket.  Id. at 1374.

In addressing the issue of validity on remand, the district court concluded that the patents were invalid for failure to comply with the written description and enablement requirements of § 112.  In reaching this conclusion, the district court observed that nothing in the written description described a jacketless injector.[3]  Moreover, the specification specifically

_____

[3]  Specifically, the district court stated:

The specification does not describe a powered injector without a pressure jacket. No where in the specification is there anything that describes an injector without a jacket: no words, no structures, no figures, and no diagrams. The abstract clearly describes an injector that allows the easy loading and unloading of a syringe through the open front end of the pressure jacket. Every relevant drawing presumes the presence of the pressure jacket. The background to the invention recites the fact that pressure jackets are used due to the impracticality of using disposable syringes in a power injector (as they cannot withstand the injector pressures).  The rest of the specification presumes the use of the pressure jacket, and the invention is directed to improvement of loading and unloading the syringe given the constraints presented by the pressure jacket. The summary of the invention clearly and consistently refers to "the" pressure jacket (as opposed to "a" jacket) indicating its constant, presumably fixed presence on the injector. The same is true with respect to the summary description of the preferred embodiment. In fact, the Court cannot find one reference to the pressure jacket that does **not** use the specific "the" in its description.

Liebel-Flarsheim Co. v. Medrad, Inc., No. 01-CV-98-858, 2005 WL 2840744, at *11 (S.D. Ohio Oct. 28, 2005) (Beckwith, C.J.)

13

stated that the invention was directed to the improvement "of loading and unloading a syringe given the constraints presented by the pressure jacket." Id. at 1375.  Finally, there was testimony from the inventors themselves concerning the importance of a pressure jacket and the fact that experiments with jacketless systems were unsuccessful.  Id.  Therefore, the district court concluded that the defendant had produced clear and convincing evidence of the patent's invalidity.  Id.

The Federal Circuit then affirmed the district court's judgment in favor of the defendant on invalidity.  The Court noted that it had previously construed the claims so that the full scope of the claimed inventions included injectors with and without a pressure jacket.  Id. at 1378-79.  Therefore, the Court stated, the full scope of the claims must be enabled in the specification.  Id. at 1379.  The Court agreed, however, that the specification did not enable the full scope of the claims because it taught away from jacketless injector systems.  The Court noted further that none of the figures in the patents depicts a pressure jacket and all of the discussion refered to a pressure jacket.  Id.  Additionally, the record demonstrated that a jacketless injector system could not have been practiced without undue experimentation.  Id.  Accordingly, the Court concluded that the specification, which addressed only systems with

_____

(emphasis in original)(internal record citations omitted).

14

pressure jackets, did not enable the full scope of the claims, which included systems with and without pressure jackets.  Id. at 1380.  In closing this section of its opinion, the Court stated:

> The irony of this situation is that Liebel successfully pressed to have its claims include a jacketless system, but, having won that battle, it then had to show that such a claim was fully enabled, a challenge it could not meet.  The motto, "beware of what one asks for," might be applicable here.

Id.

This case, however, is the mirror image of Liebel-Flarsheim.  During claim construction, Bradford argued for a construction of the '119 Patent which would have encompassed both side-loading and top-loading containers.  Conversely, conTeyor wanted a claim construction which limited the claimed invention to top-loading containers.  The Court agreed with conTeyor's proposed claim definition, principally on the basis that during the prosecution history of the '096 Patent, Bradford argued that the '119 Patent does not teach a container in which the dunnage can be accessed from the side.  Therefore, as construed by the Court, the '119 Patent is limited to claiming a top-loading container only.  Stated another way, the Court has construed the '119 Patent not to claim a side-loading container.  Thus, as construed by the Court, the '119 Patent includes the structural limitation that conTeyor claims is missing.  This is the exact opposite of the situation in Liebel-Flarsheim in which the claims, as construed, covered both types of devices.

15

Consequently, the question here is not whether the '119 Patent (and hence the '916 Patent) satisfies the written description and enablement requirement for both top-loading and side-loading containers, but rather whether it satisfies those requirements for a top-loading container only.

It clearly does.  As the Court has already stated, all of the drawings but two of the '119 Patent show embodiments in which the dunnage can only be accessed from the top.  The other embodiment, depicted in Figures 4 and 5, has dunnage that can be accessed from side, but more clearly the figures indicate that the dunnage is supposed to be accessed from the top.  Nothing in the written description of the '119 Patent indicates that the dunnage should not be accessed from the top.  Moreover, conTeyor does not argue that the specification of the '119 Patent fails to enable a top-loading container.  Therefore, the Court concludes that the specification of the '119 Patent complies with the first paragraph of 35 U.S.C. § 112.  Because the specification of the '119 Patent complies with § 112, the specification of the '916 Patent does as well.  Thus, conTeyor has not met its burden of demonstrating invalidity by clear and convincing evidence.

Accordingly, conTeyor's motion for summary judgment that the '916 Patent is invalid is not well-taken and is **DENIED.**

B. Whether the '096 Patent is Entitled to
    the Priority Date of the '119 Patent

16

conTeyor's next motion contends that the '096 Patent is not entitled to the priority date of the '119 Patent because the '119 Patent insufficiently discloses a side-loading container. As indicated above, the '096 Patent is a continuation-in-part ("CIP") application of the '916 Patent, which in turn is a divisional application of the '119 Patent. Bradford claims the filing date of the '119 Patent, February 28, 1996, as the priority date of the '096 Patent.  Doc. No. 27, at 7.

A CIP application can be entitled to different priority dates for different claims.  "Any claim in a continuation-in-part application which is directed solely to subject matter adequately disclosed under 35 U.S.C. § 112 in the parent application is entitled to the benefit of the filing date of the parent application.  However, if a claim in a continuation-in-part application recites a feature which was not disclosed or adequately supported by a proper disclosure under 35 U.S.C. 112 in the parent application, but which was first introduced or adequately supported in the continuation-in-part application such a claim is entitled only to the filing date of the continuation-in-part application." Transco Prods., Inc. v. Performance Contracting, Inc., 38 F.3d 551, 557 n.6 (Fed. Cir. 1994)(quoting MANUAL OF PATENT EXAMINING PROCEDURE § 201.11). Determination of whether a priority document contains sufficient disclosure under 35 U.S.C. § 112, first paragraph is a question

17

of law. <u>Waldemar Link v. Osteonics Corp.</u>, 32 F.3d 556, 558 (Fed. Cir. 1994). However, compliance with the written description aspect of that requirement is a question of fact. <u>Id.</u> The fact finder must determine if one skilled in the art, reading the original specification, would immediately discern the limitation at issue in the parent. <u>In re Rasmussen</u>, 650 F.2d 1212, 1215 (C.C.P.A. 1981). In other words, does the "disclosure of the application relied upon reasonably convey[ ] to the artisan that the inventor had possession at that time of the later claimed subject matter?" <u>Wang Labs., Inc. v. Toshiba Corp.</u>, 993 F.2d 858, 865 (Fed. Cir. 1993)(quoting <u>Vas-Cath Inc. v. Mahurkar</u>, 935 F.2d 1555, 1563 (Fed. Cir. 1991)). conTeyor must prove that the '096 Patent is not entitled to the priority date of the '119 Patent by clear and convincing evidence. <u>Pennwalt Corp. v. Akzona, Inc.</u>, 740 F.2d 1573, 1578 (Fed. Cir. 1984).

The Court agrees with conTeyor that the record establishes by clear and convincing evidence that the '119 Patent does not disclose a side-loading container. The analysis here is essentially the same, including the fact that the most of the drawings of the '119 Patent depict containers which can only be loaded from the top. Additionally, however, the prosecution history is even more compelling. As stated earlier, in prosecuting the '096 Patent, Bradford distinguished the '119 Patent on the grounds that the dunnage of the container in the

18

'119 Patent is accessed from the top.  More specifically, however, Bradford stated that:

> [T]he <u>Bradford et al.</u> reference clearly does not teach a dunnage structure having an open end which is in alignment with an open area of a side structure to allow access of the dunnage structure for transferring product into and out of the dunnage structure from a side of the container.

Doc. No. 48-4, at 8.  The Court notes that independent Claim 1 of the '096 Patent recites in pertinent part:

> the dunnage structure having an open end facing at least one side structure of the body, the at least one side structure defining an open area which is in alignment with the dunnage structure open end for accessing the dunnage structure and transferring product into and out of the dunnage structure from a side of the container[.]

'096 Patent, col. 13, ll. 42-47.  As can be seen, Bradford told the patent examiner, in terms practically verbatim with Claim 1, that '119 Patent does not teach the very feature that makes the invention of the '096 Patent side-loading.  Thus, based on that statement, a person skilled in the art would reasonably conclude that Bradford did not claim possession of a side-loading container in the '119 Patent.  See <u>Lockwood v. American Airlines, Inc.</u>, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997) (holding that in order to gain the benefit of an earlier filing date, each claimed limitation must appear in the specification); <u>see also</u> <u>Microsoft Corp. v. Multi-Tech Sys., Inc.</u> 357 F.3d 1340, 1350 (Fed. Cir. 2004)("We take the patentee at its word and will not construe the

scope of the '649 patent's claims more broadly than the patentee itself clearly envisioned.").

Bradford's evidence and memorandum in opposition erroneously focus on whether the container claimed in the '119 Patent can actually be loaded from the side in contending that a side-loading container is disclosed therein.[4]  There is no question that, as shown in Figures 4 and 5, the container can be loaded from the side.  Nevertheless, the fact that it would be obvious to use the container in this fashion does not mean that a side-loading container is sufficiently disclosed in the specification.  Lockwood, 107 F.3d at 1572 ("A description which renders obvious the invention for which an earlier filing date is sought is not sufficient.").  In the context of the entire specification of the '119 Patent, nothing suggests that Bradford was claiming a side-loading container.  That fact, coupled with the prosecution history of the '096 Patent, provides clear and convincing evidence that the '119 Patent fails to satisfy the

---

[4]     Bradford also argued that the Court is not bound by its finding that the '119 Patent does not disclose a side-loading container because that ruling was made in the context of claim construction and not with respect to invalidity or priority dates.  The Court recognizes that it may "engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves."  Jack Guttman, Inc. v. Kopykake Enters., 302 F.3d 1352, 1361 (Fed. Cir. 2002).  Nothing in the expanded record, however, has persuaded the Court that its original ruling concerning the scope of the disclosure of the '119 Patent should be altered or amended.

first paragraph of 35 U.S.C. § 112 insofar as a side-loading container is concerned.

Moreover, the fact that the patent examiner initially rejected the '096 Patent on the grounds of obvious-type double-patenting over the '119 Patent is inconsequential. "A rejection for obvious-type double patenting means that the claims of a later patent application are deemed obvious from the claims of an earlier patent." Quad Environmental Technologies Corp. v. Union Sanitary Dist., 946 F.2d 870, 873 (Fed. Cir. 1991)(citing In re Long, 759 F.2d 887, 893 (Fed. Cir. 1985)). Although a double-patenting rejection is based on a claim-by-claim comparison, id., as stated earlier, even an obvious variation of the parent application is insufficient to satisfy the requirement of the first paragraph of 35 U.S.C. § 112. Lockwood, 107 F.3d at 1572, Finally, it is the applicant's statements, not the examiner's reasons for rejecting the claim, which bear emphasis in determining the scope of the claims. Laitram Corp. v. Morehouse Ind., Inc., 143 F.3d 1456, 1462 (Fed. Cir. 1998). Finally, the fact that Bradford offered to file a terminal disclaimer in response to the rejection based on obvious-type double-patenting indicates that it continued to believe that the '119 Patent did not disclose a side-loading container, despite the examiner's apparent conclusion otherwise. Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 941 (Fed. Cir. 1992)("The terminal

disclaimer filed in '322 did no more than give up the portion of the patent term beyond the expiration date of the '911 patent. It did not concede double patenting with relation to any other patent."). Therefore, the Court concludes that the patent examiner's initial rejection of the '096 Patent on the grounds of obvious-type double-patenting is not entitled to any weight in determining whether the '119 Patent sufficiently discloses a side-loading container.

Accordingly, conTeyor is entitled to summary judgment on its contention that the '096 Patent cannot claim the filing date of the '119 Patent. Therefore, conTeyor's motion for summary judgment (Doc. No. 106) is well-taken and is **GRANTED.** As a result, conTeyor's alternative motion for summary judgment (Doc. No. 105), which addresses the priority dates for the dependent claims of the '096 Patent, is **MOOT.**

## C. Motion to Reconsider Newly-Produced Evidence

In a motion filed after the close of briefing on conTeyor's motions for summary judgment, Bradford requests the Court to consider newly-produced evidence in the form of an email authored by conTeyor managing director Patrick Hugenholtz on November 29, 1999. See Doc. No. 127-2, Ex. A. This email summarizes a meeting between Bradford and conTeyor concerning whether a front-loading (i.e. side-loading) container sold by Bradford to one of its customers fell within the scope of a

licensing agreement between the parties under which conTeyor apparently provided to Bradford information on front-loading technology.  See id.  According to Bradford, in the email, Hugenholtz admits that the '119 Patent covers the front-loading container sold to Bradford's customer, and consequently, dropped conTeyor's claim for royalties under the licensing agreement based on the sale of that product.  Bradford contends that Hugenholtz's email is an admission that the '119 Patent discloses a side-loading container, and, therefore, the Court should find that the '096 Patent is entitled to the priority date of the '119 Patent.  conTeyor contends that Hugenholtz's email has nothing whatever to do with what the '119 Patent discloses and that, in any event, during the November 1999 meeting, Bradford misled conTeyor as to what product was actually sold to the customer. Therefore, according to conTeyor, the alleged admission in Hugenholtz's email is based on erroneous and misleading information provided originally by Bradford.

Assuming without deciding that this email is an admission by Hugenholtz concerning the scope of the '119 Patent,[5]

_____

[5]    In relevant part, the email states:

To Bradford's opinion the current project (Ford PN96) was a project that had started, 2 years before the 2 companies signing the agreement.  They provided documentation during the meeting that dated the original contracts back to March 1997.  This project was an Adaptapak product(top-loading).  Our development for this same project was a Con-Teyor Partition System

in light of Bradford's statement to the contrary to the PTO, it does not create any issue of fact concerning whether the '119 Patent discloses a side-loading container.  The Court recognizes that the email has some relevance because the inquiry is whether a person skilled in the art would interpret the specification to encompass the claimed invention.  <u>Lockwood</u>, 107 F.3d at 1572. Thus, under other circumstances, Hugenholtz's email would be some evidence of how a person skilled in the art would construe the

---

> CPS (Front loading!!).  The customer finally bought a <u>Front Loading Adaptapak</u>.
>
> Our claim is that, although we agreed that the product does fall under the Adaptapak patent, that we provided the fundamental concepts for the "Front Loading" feature.
>
> A study of our own patent claims unfortunately does not clearly mention Front Loading, therefor [sic] we could not press this issue although one can at least severely argue this case.  It was for this reason AND as the product falls under the Adaptapak patent, that I decided to drop the claims of ConTeyor in this respect ("must be part of the current license agreement.").

Doc. No. 127-3.  According to Bradford, the reference to the "Adaptapak patent" in Hugenholtz's email is the '119 Patent because Bradford held no other patents on the Adaptapak product at this time.

The email was produced by conTeyor in a parallel arbitration proceeding between Bradford and conTeyor.  The parties vigorously dispute whether conTeyor had a duty to produce the email during the course of discovery in this case.  This dispute, however, is of no consequence because Bradford has not moved for sanctions based on conTeyor's alleged failure to produce the email, and conTeyor states that it does not object if the Court considers the email in the context of ruling on the pending motions.

specification of the '119 Patent.  Nevertheless, the applicant still must convey to persons skilled in the art that he was in possession of the invention as of the filing date sought.  Id. However, where, as in this case, the applicant specifically tells the patent examiner that its parent application does not include the very limitation for which it seeks a priority filing date, the only reasonable conclusion for the skilled artisan is that this limitation does not appear in the parent's specification. Again, it must be pointed out that the courts and the public are entitled to take the patentee at his word concerning the scope of his claims.  Microsoft Corp., 357 F.3d at 1350.  Therefore, the Court finds that Hugenholtz's email does not create any material issue of fact concerning the issue of the '096 Patent's priority date.

Accordingly, to the extent Bradford moves the Court to consider its newly-produced evidence, the motion is well-taken and is **GRANTED**.  Nevertheless, the email does not create any issue of material fact regarding the priority date of the '096 Patent.  Therefore, to that extent, the motion is **MOOT.**

## Conclusion

In conclusion, for the reasons stated, Defendants' motion for summary judgment that Claims 1, 4, and 5 of U.S. Patent No. 6,230,916 are invalid (Doc. No. 104) is not well-taken and is **DENIED**; Defendants' motion that dependent claims 6-9, 12,

25

and 15-18 of U.S. Patent No. 6,540,096 are not entitled to the filing date of U.S. Patent No. 5,725,119 (Doc. No. 105) is **MOOT**; Defendants' motion that claims 1 through 19 of U.S. Patent No. 6,540,096 are not entitled to the filing date of U.S. Patent No. 5,725,119 is well-taken and is **GRANTED**; Plaintiff's motion for the Court to consider newly-produced evidence is **GRANTED** to the extent that the Court will consider it in ruling on the motions for summary judgment, but otherwise the motion is **MOOT** because the evidence does not affect the outcome of the Court's decision.

      **IT IS SO ORDERED.**


Date April 8, 2008                      s/Sandra S. Beckwith
                                     Sandra S. Beckwith, Chief Judge
                                           United States District Court