# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Bradford Company,         )

                             )

          Plaintiff,         )

                             )

       vs.               )     Case No. 1:05-cv-449

                             )

Afco Manufacturing,       )

et al.,                     )

                             )

        Defendants.      )

                             )

                             )

## ORDER

This matter is before the Court on Defendant conTeyor Multibag System N.V.'s ("conteyor Multibag's") Renewed Motion to Dismiss for Lack of Personal Jurisdiction. Doc. 76.  Plaintiff Bradford Company ("Bradford") opposes the motion.  Doc. 84. Defendant has filed a reply in support of its motion.  Doc. 87.  For the reasons that follow, Defendant's motion is **GRANTED**.

## I.  Background

Plaintiff Bradford filed this action for patent infringement against Defendants conTeyor Multibag, conTeyor North America, Inc. ("conteyor N.A."), Afco

1

Manufacturing ("Afco") and American Metal Products, Inc. ("American Metal") on July

1, 2005.  Bradford reached settlements with Afco and American Metal and dismissed its

claims against them.

According to the complaint, Bradford and conTeyor N.A. are both Michigan

corporations with their principal places of business in Michigan, conteyor Multibag is a

Belgian corporation with its principal place of business in Belgium and with local offices

in the United States, and Afco is located in Cincinnati, Ohio.  Plaintiff is in the business

of manufacturing packaging products and material handling systems.  Plaintiff alleges

that on information and belief, Defendants have and are presently "making, using,

offering for sale and/or selling products in violation of Bradford's Patents," as well as

inducing others to infringe the patents and/or aiding and abetting the infringement of the

patents, including the patents for racks identical or substantially identical to the

collapsible shipping rack shown in Exhibit 1 to the Complaint. Plaintiff further alleges

that Afco has sold or manufactured the collapsible shipping rack shown in Exhibit 1, and

conTeyor N.A. has ordered or intends to order the shipping rack from Afco and/or

American Metal.  Plaintiff claims on information and belief that conTeyor Multibag has

"aided and abetted and actively induced conTeyor North America to make products that

infringe Bradford's Patents[,] including the product illustrated in Exhibit 1."

On September 7, 2005, conTeyor Multibag moved to dismiss the complaint against

it for lack of personal jurisdiction.  Doc. 9.  The Court issued an Order on January 19,

2

2006, denying the motion. Doc. 28. The Court determined that the pleadings and submissions did not establish a prima facie case of personal jurisdiction as to conTeyor Multibag. The Court, however, denied conTeyor Multibag's motion to dismiss, allowed Bradford an opportunity to develop the jurisdictional issues through discovery, and determined that conTeyor Multibag could renew its motion to dismiss at an appropriate time following the close of discovery.

Now that discovery has been completed, conTeyor Multibag is before the Court on its renewed motion to dismiss. Defendant contends that Plaintiff cannot establish that there is personal jurisdiction as to it because (1) Plaintiff's cause of action does not arise out of conTeyor Multibag's "contacts" with Ohio and personal jurisdiction is not otherwise authorized by Ohio's long-arm statute; (2) conteyor Multibag does not have "continuous and systematic" contacts with Ohio; and (3) conTeyor Multibag is not an alter ego of conTeyor N.A.

In response, Plaintiff alleges that ConTeyor Multibag has consented to the jurisdiction of the Court by entering into agreements with non-party The Kennedy Group ("TKG") and with Plaintiff which contain forum selection clauses designating Ohio as the forum for dispute resolution. Plaintiff also presents five theories pursuant to which the Court may exercise personal jurisdiction over conTeyor Multibag based on the acts of its subsidiary conteyor N.A. These are the doctrines of (1) agency, (2) attribution, (3) merger, (4) alter ego and (5) joint venture. Plaintiff goes on to divide into five categories

3

the evidence it has submitted in support of its position that the exercise of personal

jurisdiction over conTeyor Multibag is proper.  This includes evidence of direct business

contacts or relationships between conTeyor Multibag and companies located or doing

business in Ohio, specifically TKG and Afco (first and fifth categories); evidence that

purportedly demonstrates the use of conTeyor Multibag's intellectual property in Ohio

(second category); evidence of conTeyor Multibag and conTeyor N.A.'s "overlapping

and symbiotic" relationship (third category); and evidence of the two companies'

purported "direct collaboration" (fourth category).  Finally, Plaintiff argues that the Court

can exercise personal jurisdiction over conTeyor Multibag by applying Fed. R. Civ. P.

4(k)(2) or, in the alternative, that the Court can transfer this case to Michigan based on

conTeyor Multibag's contacts with that state.

## II.  Analysis

### a.  Applicable Law

As the Court stated in its prior Order, Federal Circuit law governs the resolution of

personal jurisdiction determinations in patent cases.  See Red Wing Shoe Co. v.

Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998).

### b.  Standard of Review

Initially, there is an issue as to the burden of proof Plaintiff must meet in order to

establish that personal jurisdiction exists over conTeyor Multibag.  Plaintiff cites the

Sixth Circuit decision in Serras v. First Bank Nat'l Ass'n for the proposition that it need

4

only make a prima facie showing that personal jurisdiction exists. 875 F.2d 1212, 1214 (6th Cir. 1989). conTeyor Multibag cites Serras for its position that because discovery has been conducted, Plaintiff is required to establish personal jurisdiction over it by a preponderance of the evidence. conTeyor Multibag also cites McNutt v. General Motors Acceptance Corp. of Indiana, which holds generally that

> if [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.

298 U.S. 178, 189 (1936). Finally, conTeyor Multibag cites Welsh v. Gibbs, which states that if the court conducts "a preliminary evidentiary hearing . . . the plaintiff must show by a preponderance of the evidence that jurisdiction exists." 631 F.2d 436, 439 (6th Cir. 1980).

conTeyor Multibag's interpretation of the above cases to mean that the plaintiff's burden increases to the preponderance of the evidence where full discovery has occurred but no evidentiary hearing has been held is incorrect. McNutt does not discuss the applicable burden of proof in this situation, and Welsh plainly states that the preponderance of evidence standard applies if the court conducts "a preliminary evidentiary hearing" but does not indicate that this standard applies when discovery has been completed but no evidentiary hearing has been held. It is clear from the following

language in Serras that the preponderance of evidence standard applies only where the

court actually conducts an evidentiary hearing:

> If the written submissions raise disputed issues of fact or seem to require
> determinations of credibility, the court retains the power to order an
> evidentiary hearing, Welsh, 631 F.2d at 439, and to order discovery of a
> scope broad enough to prepare the parties for that hearing.  Wells Fargo &
> Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n. 24 (9th Cir.1977)).
> At this stage, the burden on the party asserting jurisdiction quite properly
> increases.  She must now establish that jurisdiction exists by the same
> standard that would obtain if the matter were deferred to trial: the
> preponderance of the evidence. Welsh, 631 F.2d at 439.

875 F.2d at 1214.  Finally, the Sixth Circuit left no doubt in Dean v. Motel 6 Operating

L.P. that the preponderance of evidence standard does not apply where no evidentiary

hearing has been held.  134 F.3d 1269, 1271-1272 (6th Cir. 1998).  The Court stated that

although the plaintiff must ordinarily prove jurisdiction by a preponderance of the

evidence, that standard did not apply in the case before the Court "because (although

there was discovery) there was no evidentiary hearing on the jurisdiction question."  Id.

The Court stated,

> The lack of such a hearing mandates a specific standard for weighing the
> evidence: . . . the court must consider the pleadings and affidavits in a light
> most favorable to the plaintiff . . . . To defeat such a motion, [the plaintiff]
> need only make a prima facie showing of jurisdiction.  Furthermore, a court
> . . . does not weigh the controverting assertions of the party seeking
> dismissal . . . . Id. (citations omitted).

The standard employed by the Sixth Circuit is identical to that followed by the

Federal Circuit, which requires that "[w]hen a motion to dismiss for lack of jurisdiction is

decided on the basis of affidavits and other written materials, the plaintiff need only make

6

a prima facie showing," and "if the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ." <u>See Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation</u>, 297 F.3d 1343, 1347 (Fed. Cir. 2002).

No party to this case has requested an evidentiary hearing on the issue of jurisdiction, and the Court is able to resolve the issue on the basis of the parties' written submissions. Because an evidentiary hearing will not be held, Plaintiff is required to make only a prima facie showing of personal jurisdiction. The Court must construe the evidence in the light most favorable to Plaintiff and will not consider any controverting evidence submitted by conTeyor Multibag.

c. <u>The Law of Personal Jurisdiction</u>

In any federal case, the exercise of jurisdiction over nonresident defendants of a forum state must comport with due process requirements. The exercise of personal jurisdiction is not inconsistent with due process if the nonresident defendants have certain "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).

There are two kinds of personal jurisdiction that can be exercised consistent with the Due Process Clause: general and specific. <u>Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.</u>, 395 F.3d 1275, 1279 (Fed. Cir. 2005) (citations omitted). General personal jurisdiction requires that the defendant have "continuous and systematic" contacts with the forum state and confers personal jurisdiction even when the cause of action has no

relationship with those contacts. Silent Drive, Inc. v. Strong Industries, Inc. 326 F.3d 1194, 1200 ( Fed. Cir.  2003) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984); Deprenyl Animal Health, 297 F.3d at 1350; LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000)).

Specific personal jurisdiction must be based on activities that arise out of or relate to the cause of action and can exist even if the defendant's contacts are "isolated and sporadic." Id. (citing Burger King v. Rudzewicz, 471 U.S. 462, 472-73; (1985); Deprenyl, 297 F.3d at 1350; LSI Indus., 232 F.3d at 1375).  The two-step process that guides the Court's specific jurisdiction analysis is (1) whether the forum state's long-arm statute is satisfied and, if so, (2) whether maintenance of the suit comports with the Due Process Clause.  Id. at 1200-01 (citations omitted).  Because Ohio's long-arm statute does not extend to the limits of the Due Process Clause (see Hildebrand v. Steck Mfg. Co., Inc., 279 F.3d 1351, 1354 (Fed. Cir. 2002)), the two inquiries do not merge in this case but must be considered separately.

Ohio's long-arm statute, Ohio Rev. Code § 2307.382, provides, in pertinent part, as follows:

>(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
>(1) Transacting any business in this state;
>(2) Contracting to supply services or goods in this state;
>(3) Causing tortious injury by an act or omission in this state;
>(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

Where jurisdiction over a person is based solely upon Ohio's long-arm statute, "only a cause of action arising from acts enumerated in [§ 2307.382] may be asserted against [a defendant]." Ohio Rev. Code § 2307.382(C); Burnshire Development, LLC v. Cliffs Reduced Iron Corp., 198 Fed.Appx. 425, 430 (6th Cir. 2006) (not published in Fed. Reporter). Subsection (C) requires that "[t]he defendant's actions in the state must be the proximate cause of the injury complained of . . . ." Id.

When analyzing whether § (A)(1) is satisfied, there is "no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio," and "the court must therefore rely on a case-by-case determination." U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc., 68 Ohio St.3d 181, 185 (1994). Section (A)(1) is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are *transacting any* business in Ohio." Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, 53 Ohio St.3d 73, 75 (1990) (emphasis in original).

9

In order to satisfy due process requirements for the exercise of specific jurisdiction, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475.  The contacts must proximately result from actions by the defendant itself that create a "substantial connection" with the forum state.  Id.  Where the defendant has availed itself of the privilege of conducting business in the forum state, it is "presumptively not unreasonable to require [defendant] to submit to the burdens of litigation in that forum as well." Id. at 475-76 (further citations and quotations omitted).

The Federal Circuit has adopted a three-factor test for specific personal jurisdiction that embodies the Supreme Court's jurisprudence.  Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003).  To determine whether jurisdiction over an out-of-state defendant comports with due process, the factors to be considered are whether "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." Id. (citation omitted).  The first two factors correspond to the "minimum contacts" prong of the International Shoe analysis, and the third factor with the "fair play and substantial justice" prong.  Id. (citation omitted).  While the plaintiff bears the burden to establish minimum contacts, once this showing is made, defendants must prove that the exercise of jurisdiction is unreasonable. Id. (citation omitted).

10

d. <u>Alleged Consent to Jurisdiction</u>

Plaintiff alleges that conTeyor Multibag has not objected in general to being subjected to the jurisdiction of any Ohio courts. Plaintiff alleges that in fact, conTeyor Multibag consented as a matter of law to the jurisdiction of the Ohio courts by signing (1) a License Agreement with Plaintiff whereby it voluntarily agreed that any disputes arising out of the License Agreement or a breach of the Agreement that are not settled by mediation shall be settled by an "arbitrator sitting in Cincinnati, Ohio" and (2) a Distributorship Agreement with TKG whereby conTeyor Multibag agreed that any disputes arising under that Agreement would be arbitrated in Cleveland, Ohio.

In its Order on conTeyor Multibag's original Motion to Dismiss, the Court addressed Plaintiff's argument that conTeyor Multibag has consented to suit in Ohio courts by entering into both a License Agreement with Plaintiff as well as the Distributorship Agreement with TKG. The Court noted that this dispute does not arise out a breach of the alleged License Agreement with Plaintiff; Plaintiff had not cited, and this Court had not found, any cases holding that consent to a forum's jurisdiction in the forum selection clause of a contract constitutes a waiver of jurisdiction in causes of action not arising out of that agreement; and Plaintiff's argument raised due process concerns about the foreseeability of being haled into court in Ohio on an unrelated matter. The Court found that the forum selection clause in conTeyor Multibag's Distribution Agreement with TKG presented due process concerns for the same reasons. In its opposition to the renewed motion to dismiss, Plaintiff cites <u>Merrill, Lynch, Pierce, Fenner</u>

11

& Smith, Inc. v. Shaddock, 822 F.Supp. 125, 128 (S.D. N.Y. 1993) for the proposition that forum selection clauses are regularly enforced as constituting valid consents to jurisdiction in a particular forum, and agreements to arbitrate in a particular forum have been held to constitute consent to personal jurisdiction in the courts of that forum.

While many courts recognize that a party may waive the requirement that a court have personal jurisdiction over it and may agree in advance to submit to the jurisdiction of a particular court system through a forum selection clause,[1] Plaintiff still has not cited any authority for the proposition that by entering into a contract containing a forum selection clause that specifically pertains to disputes arising out of that contract, a party consents in advance to the jurisdiction of a particular court system for any and all disputes it may have with another party to the contract, including disputes that do not arise out of the contract.  Plaintiff has presented no authority or arguments to ameliorate the Court's previously expressed concern that such a far-reaching interpretation of a forum selection clause infringes upon a party's due process rights.  It would not be consistent with either principles of contract law or due process, both of which look to whether a party would have foreseen the consequences of its actions, to hold that a party has consented to the jurisdiction of a court over a particular dispute by entering into a contract that has no connection whatsoever to that dispute.  For these reasons, the Court finds that conTeyor Multibag has not consented to being haled into court in Ohio on the patent infringement

_____

[1]  The Sixth Circuit is among these courts.  See Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006).

12

dispute at issue.

e.  Theories of Jurisdiction

Although Plaintiff presents five theories pursuant to which this Court may allegedly assert jurisdiction, Plaintiff does not demonstrate how each theory applies to the particular facts of this case.  Instead, Plaintiff simply sets forth the law governing each theory and then makes the broad statement that because conTeyor N.A does not contest this Court's jurisdiction over it, to the extent its contacts and activities are attributable to conTeyor Multibag under any of these theories, this Court has jurisdiction over the latter Defendant.  Plaintiff then cites the evidence that allegedly shows that the exercise of jurisdiction over conTeyor Multibag is proper and which it has divided into the following five categories: (1) "[conTeyor Multibag] and [TKG] in Ohio"; (2) "[conTeyor Multibag]'s Intellectual Property in Ohio"; (3) "[conTeyor Multibag] and [conTeyor N.A.]'s Overlapping and Symbiotic Relationship"; (4) "[conTeyor Multibag] and [conTeyor N.A.]'s Direct Collaboration"; and (5) "[conTeyor Multibag]'s Connection with Afco in Cincinnati."  Plaintiff offers little explanation as to how the evidence supports the exercise of either specific or general personal jurisdiction and under what theory.  Thus, it falls to the Court to parse the evidence submitted on the jurisdictional question and determine whether that evidence establishes systematic and continuous contacts with the state of Ohio so as to support the exercise of general jurisdiction, or whether there is specific jurisdiction under any of the theories presented by Plaintiff.

i.  General Jurisdiction

In support of the exercise of general jurisdiction, Plaintiff argues that conTeyor Multibag has engaged in continuous and systematic conduct in Ohio and has conducted substantial business in Ohio over a several-year period with Afco and TKG.[2]  Plaintiff does not allege that conTeyor Multibag has conducted business directly with Afco but only that it has done business with Afco through conTeyor N.A.  Specifically, Plaintiff alleges that conTeyor N.A. has purchased from Afco in Ohio the shipping rack that is attached to the Complaint as Exhibit 1.  Plaintiff alleges that there are direct business contacts between conTeyor Multibag and TKG in the form of the above-referenced Distributorship Agreement between these two entities, which is governed by the laws of the state of Ohio and under which conTeyor Multibag agreed that any disputes arising under the Agreement would be arbitrated in Ohio.  See doc. 9, exh. B.  Plaintiff alleges that pursuant to the Agreement, conTeyor Multibag has been a customer of and distributor for TKG since 1999; between 1999 and 2006, conTeyor Multibag placed approximately 140 separate orders with TKG;  TKG sold and delivered to conTeyor Multibag thousands of TKG's patented placard products manufactured in Ohio;  the total sales from TKG to conTeyor Multibag between 2001 and 2006 totaled nearly $500,000;

---

[2] Plaintiff appears to rely on conTeyor Multibag's contacts with TKG as a basis for the exercise of specific jurisdiction.  Plaintiff asserts in connection with these contacts that conTeyor Multibag "admits that it transacts business in Ohio" and that it "in fact has some connection to the 'goods used or consumed or services rendered in Ohio,'" which are apparent references to provisions of the Ohio long-arm statute.  Because conTeyor Multibag's contacts with TKG clearly do not, however, relate to the dispute before the Court, those contacts cannot support the exercise of specific jurisdiction and will be addressed only insofar as they could potentially confer general personal jurisdiction over conTeyor Multibag.

14

representatives of conTeyor Multibag visited TKG in Willoughby, Ohio on multiple occasions; and conTeyor Multibag has approximately 75 contacts per year with TKG concerning sales and quotations.

Plaintiff also relies on the alleged use of conTeyor Multibag's intellectual property in Ohio. Plaintiff alleges that conTeyor N.A. uses on its promotional materials the "conTeyor" registered trademark, which is owned by conTeyor Multibag, and the conTeyor website, which is a conTeyor Multibag website located in Belgium. See doc. 84, exh. 6. Plaintiff further alleges that the products at issue in this case were manufactured in Ohio by Afco and bear labels on the dunnage that (1) utilize the conTeyor Multibag registered trademark, (2) identify the conTeyor Multibag website, and (3) state "patent pending" in direct reference to a pending United States patent application owned by conTeyor Multibag. See doc. 84, exhs. 7, 8.

In reply, ConTeyor Multibag argues that having intellectual property present in a state is insufficient to confer jurisdiction. conTeyor Multibag also contends that Plaintiff provides no authority for the proposition that a licensee's (conTeyor N.A.'s) use of a copyright, trademark, website, or the term "patent pending" in a state subjects the licensor (conTeyor Multibag) to jurisdiction in that state, and there is likewise no authority holding that a licensor of intellectual property can be haled into court by an unrelated third-party as a result of a licensee's conduct.

conTeyor Multibag further argues that its Agreement with TKG does not establish the "continuous and systematic contacts" required in order to satisfy the test for general

jurisdiction. conTeyor Multibag contends that the evidence supports the Declaration of

Patrick Hugenholtz, Managing Director of conTeyor Multibag, that conTeyor Multibag

"does not transact business in Ohio, except nominally as a European distributor of a label

products [sic] in Europe for the Kennedy Group of Cleveland Ohio." Doc. 9, exh. A.

conTeyor Multibag relies on the deposition testimony of various individuals as

establishing that it is the distributor for TKG in Europe (doc. 76, exh. C, Hugenholtz

depo., pp. 28); in accordance with the Distributorship Agreement, conTeyor Multibag

represented TKG in Europe (doc. 76, exh. F, Bart Berghuis depo., pp. 76-77); and

Hugenholtz made three visits to Ohio around 1999-2001, the purpose of each of which

was to "understand if [conTeyor Multibag] could sell their products in Europe." Doc. 76,

exh. D, Hugenholtz 30(b)(6) depo., pp. 167-68. conTeyor Multibag has submitted an

August 29, 2006, affidavit of Michael Kennedy, the President of TKG since 1996, in

which he avers that between 1999 and 2006, TKG has submitted numerous proposals to

sell and deliver to conTeyor Multibag products manufactured at TKG's Willoughby, Ohio

facility and TKG has sold and delivered to conTeyor Multibag thousands of placard

products manufactured at the facility; Hugenholtz and another conTeyor Multibag

employee visited TKG in 2001; and conTeyor Multibag and TKG representatives

communicate frequently by e-mail concerning their business relationship and activities.

Doc. 76, exh. A. conTeyor Multibag's responses to interrogatories establish that its

representatives visited Ohio a total of five times beginning in 1999 concerning their

business relationship and that it communicated with TKG primarily by e-mail and written

16

correspondence, although there may have been periodic telephone calls and video conferences.  conTeyor Multibag also contends that the revenue from its sales of the TKG products comprised less than 1% of its total sales revenues over the period of the sales. Doc. 76, exh. B.  Finally, conTeyor Multibag acknowledges a one-time shipment of products that it sold to a Michigan company but shipped to an address in Ohio at the Michigan company's request.

Construing the evidence in Plaintiff's favor, the Court finds that Plaintiff has failed to establish a prima facie case of general personal jurisdiction.  Assuming that the display of either a registered trademark or website, or a reference to a "patent pending," on promotional materials or a product could be considered a "contact" with the state in which those materials or products are present for jurisdictional purposes, Plaintiff has failed to show that the promotional materials on which the "conTeyor" registered trademark and website appear were circulated in Ohio or had any other connection with Ohio.  Similarly, Plaintiff does not allege that the conTeyor Multibag registered trademark, the conTeyor Multibag website, and the "patent pending" reference to the patent application owned by conTeyor Multibag were affixed to Afco products in Ohio.[3] Even if conTeyor Multibag's intellectual property was disseminated in Ohio by conTeyor Multibag or was present in Ohio through the actions of another party, Plaintiff has not

---

[3]  The mere fact that the products were manufactured by Afco in Ohio does not mean that the labels containing the conTeyor Multibag information were affixed to the products at the site of manufacture.

demonstrated that any court has ever held that the mere presence of intellectual property in a state or the simple listing of a trademark, a website, or the term "patent pending" on a product or promotional materials, independent of any evidence as to how those materials are used, can constitute "continuous and systematic contacts" with the state. Absent any such authority, there is no support for a holding that an owner and/or licensor of intellectual property is subject to the general jurisdiction of the courts of any state in which the property may be found.

This leaves the Distributorship Agreement between conTeyor Multibag and TKG. The Court determined in its prior Order that the Agreement "does represent some intentional contact with Ohio by conTeyor Multibag" and that there "is some indicia that conTeyor Multibag has more than minimal contact with the state of Ohio." The Court determined that while the record as it stood was insufficient to conclude that conTeyor Multibag had established a prima facie case of jurisdiction, there was "sufficient evidence, in the form of The Kennedy Group agreement, to permit further discovery on the issue." The Court must now determine whether the additional evidence uncovered in discovery shows that conTeyor Multibag has sufficient contacts with Ohio, through its Distributorship Agreement with TKG, to support the exercise of general personal jurisdiction over conTeyor Multibag. For the reasons stated below, the Court finds that it does not.

The United States Supreme Court has instructed that courts must exercise "[g]reat care and reserve . . . when extending our notions of personal jurisdiction into the

international field."  Asahi Metal Industry Co., Ltd. v. Superior Court of Cal., Solano County, 480 U.S. 102, 115 (1987) (citing U.S. v. First Nat'l City Bank, 379 U.S. 378, 404 (1965) (Harlan, J.) (dissenting)).  "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Id. at 114.  As noted by the Supreme Court in Asahi,

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case.  In every case, however, those interests, as well as the Federal interest in Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.

Id. at 115.

The Supreme Court decision in Helicopteros, 466 U.S. 408, is instructive as to whether the contacts of the foreign defendant are sufficient to confer general jurisdiction in this case.  In Helicopteros, the contacts of petitioner Helicol, a Colombian corporation, with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York and Florida bank accounts checks drawn on a Houston bank; purchasing approximately 80% of its fleet of helicopters as well as spare parts and accessories for more than $4 million from Bell Helicopter Company in Texas; and sending pilots and maintenance personnel to Bell's facilities in Texas for training and to ferry the aircraft to South America.  466 U.S. at 410-411.  The Supreme

19

Court noted that there had been no other business contacts between Helicol and Texas;

Helicol had never been authorized to do business in Texas and had never had an agent for

the service of process within the State; it had never performed helicopter operations in

Texas or sold any product that reached Texas; it had never solicited business in Texas,

signed any contract in Texas, had an employee based in Texas, recruited an employee in

Texas, owned any real or personal property in Texas, or maintained an office or

establishment there; and Helicol maintained no records in Texas and had no shareholders

in the State.  In addition, none of the respondents or their decedents were domiciled in

Texas. Id. at 411-12.  The Supreme Court determined that "mere purchases, even if

occurring at regular intervals, are not enough to warrant a State's assertion of in personam

jurisdiction over a nonresident corporation in a cause of action not related to those

purchase transactions." Id. at 418.  The Court further found the fact that the defendant had

sent personnel into Texas for training in connection with the purchase of helicopters and

equipment in Texas did not in any way enhance the nature of Helicol's contacts with the

State.  Id.

As in Helicopteros, conTeyor Multibag's contacts with TKG are insufficient to

warrant the exercise of in personam jurisdiction over conTeyor Multibag in a cause of

action unrelated to those contacts.  conTeyor Multibag's purchases of products from TKG

over a period of several years are not enough, standing alone, to confer general

jurisdiction over conTeyor Multibag.  Nor do the contacts that occurred in relation to the

purchases suffice for this purpose.  The record shows that representatives of conTeyor

Multibag came to Ohio in connection with the Distributorship Agreement with TKG a total of only five times over a several-year period, and there is no information in the record concerning the nature of these visits other than that they were regarding conTeyor Multibag's purchase of TKG's products for distribution in Europe. Moreover, while the parties had approximately 75 contacts per year via e-mail and written correspondence, the record shows that these contacts all pertained to purchases of TKG's product and sales of the product in Europe, and there is no specific information in the record to show that these contacts are of any particular significance as far as the jurisdictional analysis goes. See LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1301 (6th Cir. 1989) (citing Stuart v. Spademan, 772 F.2d 1185, 1194 (5th Cir. 1985) ("A numerical count of the calls and letters has no talismanic significance: 'The quality of the contacts as demonstrating purposeful availment is the issue, not their number or their status as pre- or post-agreement communications.")). Rather, it appears that the representatives' physical visits to Ohio and the e-mail and written contacts occurred simply because conTeyor Multibag sought to expand its business in Europe by selling the products of a company based in Ohio and not because conTeyor Multibag sought to do business in Ohio or otherwise establish contacts with Ohio. Plaintiff has not shown that there have been other business contacts between conTeyor Multibag and Ohio or that conTeyor Multibag has ever signed any contract in Ohio, had an employee based in Ohio, owned any real or personal property in Ohio, maintained an office or records in Ohio, or sold any product in Ohio. In short, conTeyor Multibag's purchase of products from TKG for distribution in Europe,

21

which accounted for less than 1% of its sales revenues, coupled with its few visits to TKG

and regular e-mail and written correspondence regarding those purchases and sales, are

insufficient to show that conTeyor Multibag had "continuous and systematic contacts"

with Ohio of a nature that would justify placing the burden on conTeyor Multibag to

defend itself in a foreign country on a cause of action unrelated to the Distributorship

Agreement.  Plaintiff has failed to make a prima facie showing that the exercise of

general personal jurisdiction over conTeyor Multibag is proper.

ii.  Specific Jurisdiction

    Plaintiff apparently relies on ¶¶ (1)-(4) of Ohio Rev. Code § 2307.382(A) in

support of its position that the exercise of specific jurisdiction is proper as those are the

only provisions of the statute that Plaintiff cites in its brief.  Plaintiff alleges that

conTeyor Multibag is effectively doing business in Ohio through its subsidiary conTeyor N.A.'s contacts and activities in Ohio which are specific to the product and issues in this case and that conTeyor Multibag is using its subsidiary to do what it otherwise would have done itself. Plaintiff alleges that conTeyor Multibag has jointly participated in the alleged tortious activity within this district, causing injury to Plaintiff within this district, and jurisdiction exists under one of the following theories: (1) agency, (2) attribution, (3) merger, (4) alter ego, or (5) joint venture. Plaintiff alleges that it is reasonable for conTeyor Multibag to anticipate being haled into court in Ohio because the two companies are so closely aligned in that there is overlapping ownership and control of the entities, there has been collaboration and exchange of technical personnel, and conTeyor Multibag contributed significantly to the design of the product at issue.

conTeyor Multibag contends that it has not performed any acts "causing tortious injury" in the state of Ohio, and Plaintiff's patent infringement claims against it do not have "a substantial connection" with any of conTeyor Multibag's in-state activities, so as to support the exercise of specific jurisdiction under the Ohio long-arm statute. conTeyor Multibag's specific objections are addressed below in connection with the various theories presented by Plaintiff as a basis for the exercise of jurisdiction.

1. Direct Contacts with Ohio

Plaintiff cites the following evidence that presumably bears on the issue of specific jurisdiction but does not clearly relate to a particular theory pursuant to which jurisdiction can be exercised over conTeyor Multibag based on its relationship with its subsidiary.

23

Rather, Plaintiff asserts that this evidence shows that there are connections between conTeyor Multibag and Afco, which is located in Ohio, and that conTeyor Multibag has property in Ohio that is connected with the development of the product at issue in this case. First, plaintiff notes that "conTeyor" purchase orders issued by "conTeyor Multibag's 'local office', [conTeyor N.A.]" to Afco for products accused of infringing the patents-in-suit refer in footnote 3 to "conTeyor General Terms and Conditions." Doc. 84, exh. 49. Plaintiff alleges that there has been testimony that conTeyor N.A. did not have its own terms and conditions so that this reference must be to terms and conditions of conTeyor Multibag. conTeyor Multibag contends that Plaintiff fails to clarify that conTeyor N.A. did not have "any standard terms or conditions and was in the process of preparing draft terms and conditions to comply with local legislation." Doc. 84, exh. 56, Bart Berghuis depo., p. 103.[4]

Second, Plaintiff refers to exh. 50 to doc. 84, which is a compilation of drawings and other documents supplied by conTeyor N.A. to Afco for use in the development of the product at issue. The drawings bear the "conTeyor" registered trademark owned by conTeyor Multibag and each drawing contains the following statement:

> This drawing is [the] property of conTeyor. This drawing may not be reproduced, transmitted or used in any form without [the] explicit and written permission of conTeyor Multibag Systems nv.

---

[4] ConTeyor Multibag cites Berghuis's testimony as definitively establishing this point, when in fact Berghuis's recall on this matter was shaky. He testified that it was his "understanding" that conTeyor N.A. never had any standard terms and conditions, although there were drafts and he was trying to remember "who reviewed those for us, because we wanted to comply with local legislation," but he provided no time frame for this activity.

Plaintiff thus alleges that the drawings upon which the product at issue was originally based are property of conTeyor Multibag transmitted through its subsidiary conTeyor N.A. to Afco in Cincinnati.[5]

Third, Plaintiff points to several letters from conTeyor N.A. to Afco wherein conTeyor N.A. agreed to indemnify Afco from any patent infringement claims based on the product that Afco contracted to manufacture for conTeyor N.A., which show the conTeyor registered trademark owned by conTeyor Multibag and also the conTeyor Multibag website.  Doc. 84, exh. 51.

First, assuming conTeyor N.A. used conTeyor Multibag's general terms and conditions in its purchase orders issued to Afco, the use of those terms and conditions does not establish a connection between conTeyor Multibag and the state of Ohio that would support the exercise of personal jurisdiction over conTeyor Multibag under any theory of jurisdiction.  Second, Plaintiff has not explained the significance of the fact that the drawings supplied to Afco for use in the development of the product in question state

---

[5]  conTeyor Multibag disputes that the drawings upon which the product at issue was originally based are its property transmitted through its subsidiary conTeyor N.A. to Afco in Cincinnati.  It alleges that the use of the "conTeyor" registered trademark owned by conTeyor Multibag "on a conTeyor N.A. drawing" was an oversight.  See doc. 84, exh. 58, Mark Johnson depo., pp. 148-49.  Mr. Johnston actually testified that the drawing should state that it could not be used without the permission of conTeyor N.A. but that the statement as written means exactly what it says, which is that the drawing is the property of conTeyor Multibag.  In any event, this dispute must be resolved in Plaintiff's favor, and the Court must assume for purposes of resolving the motion to dismiss that the drawings are the property of conTeyor Multibag and they in fact contain its registered trademark.

that they are the property of conTeyor Multibag and bear the conTeyor Multibag

trademark.  Because Plaintiff alleges that these materials were transmitted to Afco

through conTeyor N.A., mere ownership of the drawings by conTeyor Multibag fails to

establish a connection between conTeyor Multibag and the state of Ohio.  Third, for the

same reasons discussed earlier in this Order, the display of the "conTeyor" registered

trademark and website on letters from conTeyor N.A. to Afco are insufficient to support

the exercise of jurisdiction over conTeyor Multibag.  Thus, in order for the Court to

exercise specific jurisdiction over conTeyor Multibag, the relationship between conTeyor

Multibag and conTeyor N.A. must be one that would permit the exercise of jurisdiction

over the parent company based on the activities of its subsidiary in Ohio.

2.  <u>Agency Theory</u>

Plaintiff argues that if the subsidiary does not have an identity separate from that

of its parent and is a mere agent through which the parent conducts its business in a

particular jurisdiction, the parent will be considered to be doing business in the

jurisdiction through the subsidiary for purposes of asserting personal jurisdiction.

Plaintiff cites 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE &

PROCEDURE § 1069.4 (3d ed. 2002) for the following proposition:

> [I]f the subsidiary is merely an agent through which the parent company
> conducts business in a particular jurisdiction or its separate corporate status
> is formal only and without any semblance of individual identity, then the
> subsidiary's business will be viewed as that of the parent and the latter will
> be said to be doing business in the jurisdiction through the subsidiary for
> purposes of asserting personal jurisdiction . . .

Plaintiff also cites a number of cases in support of this proposition.  These cases

demonstrate that a parent company is not automatically subject to jurisdiction in a state

where its subsidiary is conducting business and that the court must undertake an inquiry

into the relationship between the parent and subsidiary and the subsidiary's activities in

the jurisdiction to determine whether personal jurisdiction may be acquired over the

parent.  These cases are consistent with the discussion in WRIGHT & MILLER that precedes

the paragraph quoted above:

> When a subsidiary of a foreign corporation is carrying on business in a
> particular jurisdiction, the parent company is not automatically subject to
> jurisdiction in that state because of the presumption of corporate
> separateness.  Thus, if the subsidiary's presence in the state is primarily for
> the purpose of carrying on its own business and the subsidiary has
> preserved some semblance of independence from the parent and is not
> acting as merely one of its departments, personal jurisdiction over the
> parent corporation may not be acquired simply on the basis of the local
> activities of the subsidiary company.  The very nature of these often very
> difficult issues makes their resolution extremely fact dependent.

Plaintiff does not directly argue that conTeyor N.A. is a mere agent of conTeyor

Multibag through which conTeyor Multibag conducts its business in Ohio.  Plaintiff

instead presents a more generalized argument that conTeyor Multibag and conTeyor N.A.

have an "overlapping and symbiotic relationship."  In support of this argument, Plaintiff

27

makes the following allegations: (1) conTeyor Multibag licensed the predecessor of conTeyor N.A. to make use of conTeyor Multibag's intellectual property and through various name changes and mergers, conTeyor N.A. is the beneficiary of the License Agreement; (2) conTeyor Multibag has always been a shareholder of conTeyor N.A. and is currently the sole shareholder; (3) Hugenholtz is an officer and director of both conTeyor Multibag and conTeyor N.A. and in some instances has signed one or more agreements on behalf of both parties; (4) Berghuis, who was a conTeyor Multibag employee, became the president of conTeyor N.A., but his salary was paid for some period of time by conTeyor Multibag and conTeyor Multibag provided at least one textile engineer to conTeyor N.A.  (Doc. 84, exh. 56, Berghuis depo., pp. 94, 95);[6] (5) conTeyor Multibag misused conTeyor N.A. as a loss center;[7] and (6) conTeyor N.A. sent its profit and loss statements to conTeyor Multibag, received loans from conTeyor Multibag, and while conTeyor N.A. apparently is theoretically obligated to make annual flat fee payments to conTeyor Multibag for any assistance it might need, conTeyor Multibag's Group Engineering Manager has never tracked or billed back its time for assistance to conTeyor N.A. and conTeyor N.A. is currently $750,000 in arrears to conTeyor Multibag.

---

[6] conTeyor Multibag challenges the testimony of Berghuis because he was terminated in May 2004, prior to the development of the product at issue, and he was not aware of the relationship between conTeyor Multibag and conTeyor N.A. after leaving conTeyor Multibag. conTeyor Multibag also suggests that Berghuis is not credible.  Because the Court is deciding the jurisdictional issue based on the parties' written submissions, the Court must accept Berghuis's deposition testimony as true for purposes of the renewed motion to dismiss.

[7] Plaintiff provides absolutely no explanation as to what this means and how this assertion bears on the relationship between the two entities and the jurisdictional question.

Plaintiff also alleges that Hugenholtz has interceded with conTeyor N.A. with regard to a dispute between it and its ultimate customer of the products at issue located in Washington, further supporting the overlapping nature of the control of conTeyor N.A. by conTeyor Multibag.  (See doc. 84, exh. 52, which is a series of e-mails between conTeyor N.A. personnel and a customer followed by an inquiry from the customer to Hugenholtz as to whether "conTeyor" would honor an agreement signed by conTeyor N.A., and a response by Hugenholtz suggesting that they meet with those involved and reach a settlement).  In addition to these allegations, Plaintiff has submitted several exhibits which purportedly demonstrate the "overlapping and symbiotic" relationship between parent and subsidiary.

In response, ConTeyor Multibag alleges that parent and subsidiary maintain separate accounting systems, separate corporate books, separate addresses, separate assets, and separate equipment, and they perform separate functions.  In addition, conTeyor Multibag asserts that although it provided at least one textile engineer to conTeyor N.A., the engineer's salary and travel costs were reimbursed by conTeyor N.A. See doc. 84, exh. 56, Berghuis depo., p. 95.  conTeyor Multibag also contends that although Berghuis received a salary that was paid "for some period of time" by conTeyor Multibag, conTeyor Multibag was later reimbursed by conTeyor N.A. for his salary. Doc. 84, exh. 56, p. 94.[8]

_____

[8]  After testifying that his salary as president of conTeyor N.A. was paid by conTeyor Multibag and in response to the question whether conTeyor N.A. was reimbursed by conTeyor

The Court accepts as true for jurisdictional purposes each of Plaintiff's allegations. In addition, the Court has reviewed the exhibits Plaintiff has submitted that purportedly show "the overlapping and symbiotic nature of the relationship" between conTeyor Multibag and its presently wholly-owned subsidiary. See doc. 84, exhs. 12-24. These exhibits demonstrate that CNA, Inc. and conTeyor N.A. merged in 2003; conTeyor Multibag was a 51% shareholder of conTeyor N.A.; and the agreements Plaintiff references were a loan agreement between conTeyor N.A. and conTeyor Mexico S.A. de C.V., which Hugenholtz signed in his capacity as president of both of those companies, and an agreement by which conTeyor International nv was to provide information and services for remuneration to several other companies, including conTeyor Multibag, which Hugenholtz signed in his capacity as president or director of conTeyor Multibag and these other companies. The exhibits and allegations demonstrate that there is a close relationship between conTeyor Multibag and conTeyor N.A., but they do not establish a complete interdependence or a single corporate identity. To the contrary, it appears from the record that conTeyor N.A. has operated largely independently of conTeyor Multibag. Thus, Plaintiff has not made a prima facie showing that personal jurisdiction over conTeyor Multibag exists under an agency theory.

iii. <u>Merger and Attribution</u>

Plaintiff also relies on theories of merger and attribution as developed in decisions

---

Multibag, Berghuis answered, "Initially not, later on, yes."

from this district to support the exercise of personal jurisdiction over conTeyor Multibag. Judges in this district have used these theories in order to determine whether a nonresident defendant is subject to personal jurisdiction in Ohio based on its relationship with its subsidiary.  See Executone of Columbus, Inc. v. Inter-Tel, Inc., 2006 WL 3043115, *10 (S.D. Ohio 2006) (citing In re Telectronics Pacing Systems, Inc., 953 F.Supp. 909, 920 (S.D. Ohio 1997)).  The theory of attribution holds that a subsidiary conducts business on behalf of its parent, and the parent therefore "'purposefully avails' itself of doing business in the forum by accessing the market through a subsidiary." Id. (citing Telectronics, 953 F.Supp. at 919).  Attribution has been described as occurring when the "parent uses the subsidiary to do what it otherwise would have done itself." Telectronics, 953 F.Supp. at 919 (citing Gallagher v. Mazda Motor of America, Inc., 781 F.Supp. 1079, 1085 (E.D. Pa.1992)).  Attribution typically occurs when a foreign manufacturer distributes its products in the forum through the use of a subsidiary.  Id.  To determine whether attribution has occurred, the court may examine whether the subsidiary performs duties and functions such as marketing and distribution which the principal would normally transact through its own agents or departments. Id. (citing Superior Coal Co. v. Ruhrkohle, A.G., 83 F.R.D. 414, 421 (E.D. Pa. 1979)).

Merger is the notion that the parent and subsidiary are "so closely aligned that it [is] reasonable for the parent to anticipate being 'haled' into court in the forum because of its relationship with its subsidiary." Executone, 2006 WL 3043115, *10 (citing In re Telectronics, 953 F.Supp. at 919).  Factors to be analyzed in determining whether a parent

31

and subsidiary are "merged" for jurisdictional purposes include "an overlap in board of directors and officers, interchange of personnel between the parent and the corporation, exchange of documents and records between the parent and the subsidiary, listing [the] subsidiary as a branch, agent or division of the parent, or indicating that the subsidiary and parent are part of the same entity." Id. Other courts have looked at factors such as ownership, control and integrated management in determining if a parent/subsidiary are "merged" so that the subsidiary's contacts should be imputed to the parent corporation. Telectronics, 953 F.Supp. at 919 (citing Superior Coal Co., 83 F.R.D. at 421).

The line between the theories of attribution and merger is not always clear. Id. (citing Bulova Watch Co. v. K. Hattori & Co., 508 F.Supp. 1322, 1334 (E.D. N.Y. 1981)). Nor is the distinction important as the two theories are simply methods of "defining what constitutes traditional notions of fair play and substantial justice for purposes of the due process analysis of International Shoe based upon the parent-subsidiary relationship." Id. "The court must make "a common sense appraisal of economic relationships . . . [and] examine a business relationship from the practical viewpoint of businessmen . . . " Id. (citing Bulova Watch Co., 508 F.Supp. at 1327). Accordingly, in this case, the Court must examine the relationship between the two companies to determine whether the relationship is indicative of either attribution or merger, bearing in mind that the true inquiry is into the reasonableness of the exercise of jurisdiction.

Plaintiff has failed to show by the evidence it has submitted that conTeyor

32

Multibag instigated activity of conTeyor N.A. in Ohio or that it has used its subsidiary to do what it otherwise would have done itself so as to support the exercise of jurisdiction under a theory of attribution.  Nor does the fact that Hugenholtz serves as the Managing Director of conTeyor Multibag and as the Chairman of conTeyor N.A., viewed in conjunction with the remaining evidence, support a finding that the two companies are so closely aligned that application of the merger theory is appropriate.  Thus, Plaintiff has not made a prima facie showing that the exercise of jurisdiction over conTeyor Multibag is reasonable under a theory of merger or attribution.

4.  Alter Ego Theory

Plaintiff relies on the alter ego doctrine to support the exercise of jurisdiction over conTeyor Multibag.  In arguing that there is no jurisdiction under an alter ego theory, conTeyor Multibag states that the "Southern District of Ohio has affirmatively set the precedent for an alter ego determination" in Executone and suggests that this Court is bound by Executone.  Plaintiff challenges conTeyor Multibag's citation of Executone for the argument that the alter ego doctrine requires, at a minimum, the establishment of "financial dependency and nonobservance of corporate formalities," claiming that Executone relied on Microsys Computing v. Dynamic Data Systems, LLC, 2006 WL 2225821 (N.D. Ohio) (unpublished decision), which in turn did not rely on Ohio or federal case law "applying the alter ego theory of personal jurisdiction within the context of Ohio alter ego doctrine;" federal common law alter ego doctrine is applicable rather than Sixth Circuit law, and no Ohio state court has dealt with the alter ego doctrine in the

33

jurisdictional context; and the Court should therefore look to other federal courts that have applied the alter ego doctrine in a jurisdictional context and not apply the "two-factor litmus test" (financial dependency and non-observance of corporate formalities) urged by conTeyor Multibag. Plaintiff nonetheless cites both Executone and Microsys Computing concerning when a parent can be considered a subsidiary's alter ego for jurisdictional purposes.

Initially, this Court notes that it is not bound by the unpublished decision in Executone, although the Court can look to the reasoning employed in that case for guidance. The Court further acknowledges that in determining whether personal jurisdiction exists over conTeyor Multibag under an alter ego theory, the Court must look to the law of the Federal Circuit. Federal Circuit law holds that "a court which has jurisdiction over a corporation has jurisdiction over its alter egos." Minnesota Mining & Mfg. Co. v. Eco Chem, Inc., 757 F.2d 1256, 1265 (Fed. Cir. 1985). In such a case, the contacts of one entity are imputed to the other and due process is satisfied. Id. (citing Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc., 519 F.2d 634 (8th Cir. 1975)). This is so because "a corporation and its alter ego are the *same entity*-thus, the jurisdictional contacts of one are the jurisdictional contacts of the other for purposes of the International Shoe due process analysis." Systems Div., Inc. v. Teknek Electronics, Ltd., 253 Fed.Appx. 31, 37 (Fed. Cir. 2007) (emphasis in original) (not published in Fed. Reporter) (citing Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 653 & n. 18 (5th Cir. 2002); Howard v. Everex Sys., Inc., 228 F.3d 1057, 1069 n. 17 (9th Cir. 2000);

34

Minnesota Mining, 757 F.2d at 1265).

Neither party has cited any cases from the Federal Circuit that address the factors to be considered in determining whether an alter ego relationship exists. Plaintiff has cited cases, however, that examine the alter ego relationship in a jurisdictional context and which set forth the following factors to which courts generally look in making this determination: (1) whether one corporation owns all or most of the stock of the related corporation; (2) whether the corporations share common officers and directors; (3) whether they project a common marketing image; (4) whether they use a common trademark or logo; (5) whether they share employees; (6) whether they have an integrated sales system; (7) whether there is an interchange of managerial and supervisory personnel; (8) whether the related corporation performs business functions which the principal corporation would normally conduct through its own agents or departments; (9) whether the related corporation acts as a marketing arm or exclusive distributor of the principal corporation; (10) whether the officers of the related corporation receive instructions from the principal corporation; (11) whether the parent finances the subsidiary, (12) whether the parent caused the incorporation of the subsidiary, (13) whether the subsidiary is grossly under-capitalized, (14) whether the parent pays the salaries or expenses of the subsidiary, (15) whether the subsidiary has no business or assets apart from the parent, (16) whether there has been a failure to adhere to the formal legal requirements of the subsidiary, (17) whether there is a confusion of distinction between the parent and subsidiary, and (18) whether the subsidiary lacks a full board of

35

directors. <u>Cali v. East Coast Aviation Servs., Ltd</u>., 178 F.Supp.2d 276, 286 (E.D. N.Y. 2001) (citing <u>Superior Coal</u>, 83 F.R.D. at 421); <u>Savin Corp. v. Heritage Copy Products, Inc</u>., 661 F.Supp. 463, 469 (M.D. Pa. 1987)).  Other factors to which courts have looked include: (1) the existence of separate headquarters for each entity, (2) the observance of corporate formalities, (3) the maintenance of separate accounting systems, (4) the parent corporation's exercise of complete authority over the general policy of the subsidiary, and (5) the subsidiary's exercise of complete authority over its own daily operations. <u>Seitz v. Envirotech Systems Worldwide Inc</u>., 513 F.Supp.2d 855, 865 (S.D. Tex. 2007) (citing <u>Hargrave v. Fibreboard Corp</u>., 710 F.2d 1154, 1160 (5th Cir. 1983)).

Plaintiff has failed to show the existence of factors that would establish an alter ego relationship between conTeyor Multibag and conTeyor N.A.  While conTeyor Multibag owns all of the stock of conTeyor N.A., Hugenholtz serves as the Managing Director or Chairman of the two companies, and conTeyor Multibag provides training and other assistance to its subsidiary, there is no evidence of a disregard of corporate formalities and no evidence that conTeyor N.A. does not operate independently of conTeyor Multibag.  The evidence does not demonstrate that conTeyor Multibag directs the operations of conTeyor N.A. or exercises authority over the policy of its subsidiary. The evidence shows that the two Defendants operate in separate countries; they have separate headquarters; and they do not share the same corporate books, tax returns or financial statements but maintain separate accounting systems and have separate assets. In fact, evidence showing that payments conTeyor N.A. is supposed to make for the use

36

of intellectual property licensed to it under the License Agreement are a recorded carrying liability on conTeyor Multibag's profit and loss statements and that conTeyor N.A. formulates its own monthly profit and loss statement indicates that the two entities are separate legal entities.  Accordingly, Plaintiff has not shown that the exercise of personal jurisdiction over conTeyor Multibag is proper under an alter ego theory.

5. <u>Joint Venture Doctrine</u>

Plaintiff cites cases from other district courts and the Fourth Circuit for the proposition that "where two or more companies enter into a joint venture, the minimum contacts of one co-venturer are attributable to the other co-venturers such that personal jurisdiction over one means personal jurisdiction over all."  Plaintiff alleges that conTeyor Multibag and conTeyor N.A. engaged in joint effort and directly collaborated on both the project resulting in the manufacture and sale of the product at issue in this case and certain other projects.  Plaintiff asserts that this "joint effort and activity establishes joint infringement."  Plaintiff contends that conTeyor Multibag provided technical assistance and direction, drawings, and basic engineering support and oversight, and shared technical personnel with specific regard to the product at issue in this case.[9] Plaintiff claims that conTeyor N.A. engineers were trained by conTeyor Multibag, and are "dotted-line reporting employees" to conTeyor Multibag, and conTeyor Multibag

---

[9] <u>See</u> doc. 84, exh. 57, Vermeulen depo., pp. 22, 26, 73, 81-83, 116-117, 155-156; exh. 54, Coleman depo., pp. 40, 42, 47-48, 57; exh. 55, Lobanoff depo., pp. 73, 81-82; exh. 58, Johnston depo., pp. 52-53, 96-97, 107, 112-114, 121-123, 141-143, 157.

interviewed, and approved the hiring of, engineers at conTeyor N.A. because of the relationship between conTeyor N.A. engineers and Bart Vermeulen in Belgium.[10] Plaintiff contends that the two entities have used a single server in Belgium to share documents and drawings, collaborate, and store conTeyor N.A.'s project drawings. Finally, Plaintiff alleges that the two entities are financially intertwined.

conTeyor Multibag disputes that the accused product was a collaborative effort. conTeyor Multibag notes that Berghuis testified that while Vermeulen may have had some participation in the hiring process, he did not control the hiring process and there was not a formal sign-off process for conTeyor Multibag drawings or projects, and Vermeulen testified that he did not meet with the new engineers.  conTeyor Multibag asserts that Plaintiff fails to clarify that the training it provided was general training which included an overall explanation of the licensed conTeyor systems and how they work, including standards and protocols, (see doc. 84, exh. 57, Vermeulen depo., pp. 76-80), and Plaintiff has identified no evidence that any training was provided in specific relation to the accused product or any similar conTeyor Multibag product.  conTeyor Multibag alleges that at most, Vermeulen of conTeyor Multibag pointed Mark Johnston of conTeyor N.A. to a design conTeyor Multibag had used in Europe as an example of a container that might be of interest.  Doc. 84, exh. 58, Johnston depo., p. 114.

Plaintiff does not cite any authority for what constitutes a joint venture.  Black's

---

[10]  See doc. 84, exh. 57, Vermeulen depo., pp. 76-78; exh. 56, Berghuis depo., pp. 103-104.

Law Dictionary (8th ed. 2004) defines a joint venture as "[a] business undertaking by two or more persons engaged in a single defined project. The necessary elements are: (1) an express or implied agreement; (2) a common purpose that the group intends to carry out; (3) shared profits and losses; and (4) each member's equal voice in controlling the project." Plaintiff's evidence shows that there was a standard design for the collapsible shelf system throughout the conTeyor companies, and that standard design was the starting point for the Afco project; that generally, conTeyor Multibag would assist people at conTeyor N.A. whenever they had a problem or a question; that conTeyor Multibag employee Vermeulen provided general training to conTeyor N.A. employees by explaining conTeyor Multibag products and how they worked and sharing with engineers at conTeyor N.A. "norm documents" which set forth standards for the design of systems as well as example projects; that conTeyor N.A. designers or engineers sometimes communicated with conTeyor Multibag to obtain information, drawings or knowledge to use in design work conTeyor N.A. was performing, including with respect to the particular project at issue in this case, and they sought out the advice of individuals at conTeyor Multibag; and that Vermeulen of conTeyor Multibag had the opportunity to interview and advise as to the hiring of engineers at conTeyor N.A. because of the relationship between these individuals, but he did not control the hiring process. While this evidence establishes that conTeyor Multibag and conTeyor N.A. interacted to some extent both generally and with regard to the particular project in issue, the evidence falls far short of establishing the necessary elements of a joint venture. The exercise of

personal jurisdiction is not proper under this theory.

c. <u>Fed. R. Civ. P. 4(k)(2)</u>

Plaintiff contends that to the extent conTeyor Multibag is not subject to the jurisdiction of the courts of any state, its overall contacts with Ohio and Michigan are sufficient to satisfy the due process clause and to warrant the exercise of personal jurisdiction under Fed. R. Civ. P. 4(k)(2), which provides for personal jurisdiction over a foreign defendant who has sufficient contact with the United States to satisfy constitutional due process requirements but who is not subject to the jurisdiction of the courts of general jurisdiction of any state.  At the same time, in the event the Court does not deny the renewed motion to dismiss, Plaintiff asks the Court to transfer the case to Michigan on the ground that both conTeyor Multibag and conTeyor N.A. are subject to personal jurisdiction there.

conTeyor Multibag argues that Plaintiff has not provided any support for the proposition that it is not properly subject to the jurisdiction of any state so that Rule 4(k)(2) is satisfied.  ConTeyor Multibag also contends that because Plaintiff is requesting that this case be transferred to Michigan, Plaintiff would appear to be arguing that Michigan has jurisdiction over conTeyor Multibag, in which case Rule 4(k)(2) would not apply.  Finally, conTeyor Multibag argues that Plaintiff cannot use its motion to dismiss as an opportunity to move for a change of venue.

Fed. R. Civ. P. 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Therefore, to establish personal jurisdiction under Rule 4(k)(2), there must be: (1) a claim arising under federal law; (2) the defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the defendant must have sufficient contacts with the United States so that the court's exercise of personal jurisdiction over the defendant comports with the due process requirements of the Constitution or other federal law.  See U.S. v. Swiss American Bank, Ltd., 191 F.3d 30, 38 (1st Cir. 1999); Saudi v. Acomarit Maritimes Services, S.A., 114 Fed.Appx. 449, 455 (3rd Cir. 2004) (not reported in Fed. Reporter) (citing BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 262 (3rd Cir. 2000)).  The third prong of the test under Rule 4(k)(2) is similar to the "continuous and systematic" contacts requirement for general jurisdiction under the test of personal jurisdiction for a particular state.  Saudi, 114 Fed. Appx. at 455 (citing BP Chemicals, 229 F.3d at 262) (citing Helicopteros, 466 U.S. at 416)).

Plaintiff has not shown that the exercise of jurisdiction under Rule 4(k)(2) is proper.  Plaintiff has not alleged contacts by conTeyor Multibag with the state of Michigan which, when considered together with conTeyor Multibag's contacts with Ohio, demonstrate that the exercise of jurisdiction over conTeyor Multibag would comport with the due process requirements of the Constitution and federal law.

III.  Conclusion

In accordance with the foregoing, Plaintiff has failed to come forward with sufficient evidence to make a prima facie showing that conTeyor Multibag has sufficient contacts with either the state of Ohio or with the United States as a whole to support the exercise of personal jurisdiction over the company.  In addition, Plaintiff has not shown that conTeyor Multibag has sufficient contacts with the state of Michigan such that the exercise of jurisdiction by the Michigan courts would satisfy the Michigan long-arm statute and due process requirements and permit a transfer of this action to Michigan.

For these reasons, conTeyor Multibag's renewed motion to dismiss is **GRANTED**. conTeyor Multibag is **DISMISSED** as a party to this lawsuit.

**IT IS SO ORDERED.**


Date:   May 16, 2008                                   S/ Sandra S. Beckwith_____
                                                       Sandra S. Beckwith, Chief Judge
                                                       United States District Court

42